## The Delaware Division Canal Company *versus* The Commonwealth.

## The Commonwealth *versus* The Delaware Division Canal Company.

*Liability of company for tax on dividend and capital stock.—Validity of decision of Auditor-General as to liability for taxes.—Interest on taxes in arrear.*

1. The purchasers of the Delaware Division Canal, under the Act of 21st April 1858, providing for the sale of the state canals, became, by the authority of that act, a corporation, and as such, were liable to taxes on dividends and capital stock, imposed on like corporations by the laws then in force.

2. The Act of May 1st 1861, declaring that the companies, grantees of the different lines of canals from the Sunbury and Erie Railroad Company, should *hereafter* be subject to the payment of the same taxes assessed against like corporations, did not relieve them from the payment of taxes for the years 1858, 1859, and 1860: nor as to the "Delaware Division Canal Company," did the omission of the accountant officers of the Commonwealth to charge those taxes against it, affect her claim therefor, though the auditor-general had decided in 1859 that no liability existed: nor did the regular settlement and payment of taxes by the company, after 1861, debar a claim for the taxes previously in arrear.

3. Where, in answer to inquiry made by the officers of the company, in 1859, the auditor-general had decided that the company was not taxable under the Act of 1844, the penalty imposed by the Act of 21st April 1858, for a neglect or refusal to make the necessary returns, was held not to be incurred.

4. Under the Act of 1811, a settlement of the arrears of taxes, as completed in the office of the auditor-general, bore interest after three months from its date.

ERROR to the Common Pleas of *Dauphin county*.

This was an appeal to the Common Pleas, by The Delaware Division Canal Company of Pennsylvania, from the settlement of the auditor-general on account of the dividends of the company, from October 28th 1858 to January 25th 1860.

The facts of the case were as follows:—

On the 21st day of April 1858, the legislature passed an act, entitled "An Act for the sale of the state canals (see P. L. 1858, p. 414), by virtue of the provisions of which the Sunbury and Erie Railroad Company became the purchasers of certain divisions of said canals, and by authority of the fifth section, on the 10th day of July 1858, granted and conveyed to the defendants that division of said canals mentioned and named in said act as the Delaware Division. Defendants, as such grantees, by virtue of said act, thereupon became a corporation, under the corporate name of "The Delaware Division Canal Company of Pennsylvania." Letters patent, bearing date July 14th 1858, under the

[Delaware Division Canal Co. *v.* Commonwealth.]

great seal of the state, were also issued to and accepted by them under the same name, style, and title.

By the first section of the act it was made the duty of the president or treasurer of all institutions and companies incorporated by or under the laws of this state to make report, in writing, of certain matters therein specified annually, in the month of November, to the auditor-general. The second section declares that if the said officers of any such company or corporation shall neglect or refuse to furnish the auditor-general, on or before December 31st in each and every year, with the report, &c., aforesaid, it shall be the duty of the accountant officers to add 10 per cent. to the tax of said corporation for each and every year for which the same was not so furnished, to be settled and collected with the tax in the usual manner of settling accounts and collecting such taxes.

By an act approved April 12th 1859, entitled "An Act to equalize taxation upon corporations" (P. L. 519), it was provided that the capital stock of all companies whatever, incorporated by or under any law of this Commonwealth, &c., shall be subject to and pay a tax annually at the rate of one half-mill for each one per cent. of dividend made and declared, &c., and in case of no dividend, then three mills upon a valuation of the capital stock, &c., and that all unsettled accounts should be adjusted in accordance with the provisions of said act.

The defendants omitted to make the report required of them by Act of April 21st 1858 for the years 1858, 1859, and 1860, on or before the 31st December of each of said years, being advised that they were not liable for tax under the Act of April 29th 1844, § 33, by the then auditor-general. May 1st 1861, the following Act of Assembly was approved:—

" Whereas, doubts have arisen whether, under the existing laws of this Commonwealth, the companies and associations which have purchased and now own the different lines of canals heretofore sold by the Commonwealth of Pennsylvania to the Sunbury and Erie Railroad Company, are subject to a state tax upon their capital stock:

" And whereas, it is right and proper that such doubts should be removed, and that the aforesaid companies and associations should pay to the Commonwealth like taxes as are now imposed upon corporations of a similar character: therefore,

" Section 1. Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania in General Assembly met, and it is hereby enacted by the authority of the same, That the Delaware Division Canal Company of Pennsylvania, the West Branch and Susquehanna Division Canal Company, the North Branch Canal Company, and the Wyoming Canal Company, are each and all of them declared to be hereafter subject

[Delaware Division Canal Co. v. Commonwealth.]

to the payment to the Commonwealth of the same taxes upon their capital stock respectively as are now assessed upon the capital stock of companies incorporated by or under any laws of this Commonwealth, in pursuance of the act entitled 'An Act to equalize taxation upon corporations,' approved the twelfth day of April, one thousand eight hundred and fifty-nine.

"Sect. 2. That the provisions of the act entitled 'An Act for the better securing to the Commonwealth the payment of taxes due by incorporated companies,' approved April twenty-first, one thousand eight hundred and fifty-eight, so far as the same apply to the annual reports to be made by incorporated companies to the auditor-general of this Commonwealth, are hereby extended to the companies particularly enumerated in the first section of this act; and if either of the said companies shall neglect or refuse to make the annual reports as therein required, such company shall be subject to the same penalties as are by the said act imposed upon all companies incorporated under the laws of this Commonwealth for a like neglect or refusal to make the returns aforesaid."

After the passage of this act returns were made for 1861, 1862, 1863, accounts settled by the accountant officers of the Commonwealth, and the several amounts paid as settled. In November 1863, a claim was made by the then auditor-general for the taxes of 1858, 1859, and 1860, to which the company made a return, and furnishing a statement of the annual dividends declared by them from October 28th 1858, to July 25th 1860, inclusive, amounting to $196,928.50, signed and sworn to by the treasurer; to which was appended the following:—

"The foregoing return is made in accordance with the written request of the auditor-general; but the Delaware Division Canal Company does not, by complying with the aforesaid request, admit its liability to taxation for the years included in this return."

Upon the receiving of the above report, the accountant department settled an account against the defendants, charging the company with the tax on capital stock for 1858, 1859, and 1860, ending with the first Monday of each year, adding thereto 10 per cent. for failure to report on or before December 31st in each year, as per Act of April 21st 1858, and claiming as due the Commonwealth the sum of $10,831.04.

From this settlement the defendants appealed to the Court of Common Pleas of Dauphin county, and filed the following specifications of objections:—

1. The said company is improperly and illegally charged in the said settlement with taxes upon its capital stock for the years 1858, 1859, and 1860, because the said company was not liable to any tax upon its capital stock for the above-mentioned years.

2. An addition of 10 per cent. is made to the amount of taxes

14 Wr.—26

assessed upon the capital stock of the company for the year 1858 for failure to report, which said addition is illegal, because the said company was not bound to make said report, and because the said company was informed by letter, dated the 7th December 1858, by the auditor-general, that there was no tax due from said company, and that said company was not taxable under the laws of the Commonwealth.

3. The addition of 10 per cent., charged in said settlement for the years 1859 and 1860, is unauthorized and illegal.

The court below (PEARSON, P. J.) charged the jury as follows:—

" There are three points of law raised on the facts proved in the present case, which are undisputed—

" 1. Is the defendant subject to the penalty of the 10 per cent. for failing to report to the auditor-general the amount of its dividends, or an appraisement of the value of its capital stock during the year ?    Such a report was necessary under the thirty-third section of the Act of 1844, and is now particularly enjoined by the first and second sections of the Act of the 21st of April 1858 (P. L. 419–20), which directs all corporations taxable under the laws of this Commonwealth, in the month of November of each year, to make such report.    The second section of that act provides that, if any such corporation shall neglect or refuse to make such return or appraisement on or before the 31st day of December annually, there shall be added 10 per centum to the tax of such corporation for each year.    Was there such a neglect or refusal here as would subject this corporation to the penalty ?    The evidence shows that the officers of this canal company, during the month of November 1858, was in anxious correspondence with the auditor-general on the subject of its taxes, inquiring the rate thereof, how to be computed, from what time, &c.; and, on the 7th of December 1858, that officer wrote, stating that the corporation was not taxable under the Act of 1844, and that there was no tax due from it at that time.    The officers of this company had no reason to believe that it owed any tax to the state, after receiving such a notice from the fiscal officer of the government, until the passage of the Act of the 1st day of May 1861, clearly imposing the tax, and from that time forward it has been regularly paid.    It is true that every one is bound to know the law, but the Act of 1858 imposes the penalty for ' a neglect or refusal' to make the required report.    Could the conduct of this corporation be considered either ?    It had applied to the proper office and officer for information, and was informed that it owed nothing— did not come within the tax laws.    To call this such a neglect or, refusal as would subject it to a penalty, would confound all our notions of right and wrong, and be at war with the whole system of jurisprudence in Pennsylvania.    It never was the intention of

the legislature to impose a penalty in any such case. It is the spirit of the decision, in The Easton Bank *v.* The Commonwealth, 10 Barr 442, that penalties will not be imposed where there are serious doubts as to the proper construction of an Act of Assembly, and no intentional violation of its provisions. Many other cases might be cited to the same effect. It can scarcely be said that *no doubts* existed here, for it is declared by the legislature, in the preamble to the Act of May 1st 1861, that doubts have arisen as to the liability of this and other similar companies to pay taxes, and provision is then made for their payment thereafter. You will, therefore, render a verdict in favour of the Commonwealth, for the amount of the tax, as settled at the accountant department, for the years 1858, 1859, and 1860, *minus* the penalty charged, and will compute interest on the sum thus found, after three months from the date of that settlement, and we will reserve the other questions raised and argued in this case, to wit: 1. Was this corporation subject to any tax prior to the Act of 1861 ? Is it absolved from all former taxation by the words of that act, or is the state barred by the several settlements annually made ? And, 2. Does the settlement bear interest, the amount having been reduced by throwing off the penalties ?"

Under this instruction, there was a verdict in favour of the Commonwealth for $10,317.87.

On the reserved points the following opinion was delivered :—

" The Governor of this Commonwealth issued his letters patent incorporating a company called ' The Delaware Division of the Pennsylvania Canal,' on the 18th day of July 1858, under what authority we need scarcely pause to inquire, as the counsel on both sides treat it as an incorporated company. It is so considered and spoken of in 'the Act of May 1st 1861, but I must confess myself unable to discover any law giving such a power to the governor. It is certainly not embraced in the Act of 6th of April 1791, or its supplements, and is not authorized by the fifth section of the Act of April 21st 1858, for the sale of the public works. Possibly it may be conferred by some act which has escaped my observation. The company, after accepting and acting under such a charter of incorporation, may be estopped from denying its existence and validity ; and if not utterly void, but only voidable, it cannot be inquired into in this case—may possibly come into question when the company asserts some right under it. We have not seen or read the charter, and have it not before us. The Delaware Division of the Pennsylvania Canal was transferred to the Sunbury and Erie Railroad Company by virtue of the Act of April 21st 1858, clear of all encumbrance except the unpaid purchase-money, and would be subject to a tax in the hands of that company from thence forward. It probably was transferred to the present company soon after its incorporation, which should

have been reported to the auditor-general during the following November. At that time there was something over six months' taxes due on the dividend and capital stock in the hands of the two companies, and the established usage of the department in such cases is to charge for half a year's tax. No valid or legal reason has been presented to excuse this corporation from paying a tax on its capital stock and dividends, under the Act of 1844, and prior laws, or on its capital stock under the Act of April 12th 1859. Those laws embrace all incorporated companies owning stock within the Commonwealth, unless where the same are expressly excepted by the statutes. Do the settlements which have been made, and receipts given, discharge this company from all taxes prior to that of 1861 ? We find that on the fifth day of December 1861, a regular account is stated, by the department, of the taxes due for that year, and the same was paid. This appears on its face to have been done under the Act of May 1st 1861. Payment has also been made of the tax due each year since. It must be conceded that in ordinary cases between individuals, a settlement or payment of subsequent years' indebtedness will be presumed to discharge prior claims. But that presumption may readily be repelled by showing that the earlier one was not included. Conceding, for the present, that an erroneous settlement made of a certain year's tax by the auditor-general and state treasurer, and payment thereof cannot afterwards be overhauled for mistake, yet that would certainly not debar the state from presenting a claim for a tax never settled by those officers, or paid by the debtor. We think it unimportant that the tax was due for a prior year ; the settlement is no bar. It plainly appears on its face that these years' taxes were not included. It is a legal maxim that the government is not to be injured either by the mistake or negligence of its officers, therefore the auditor-general, deciding that this corporation was not subject to taxation, and informing its officers that there was nothing due from it therefor, will not discharge the duty, but it must be paid when the mistake is discovered. In the case of the Easton Bank, already cited, the auditor-general informed the bank officers that it was chargeable with only a certain amount of taxes, which was paid ; yet that was held to be no bar to a new settlement, and additional charge of taxes for the same year. In our opinion there is nothing in these settlements and payments which will absolve this corporation from paying the taxes now claimed.

" Is the state debarred, by the Act of May 1st 1861, from claiming any tax from this corporation prior to its passage ? The preamble to the statute declares that it is passed to remove doubts which have arisen relative to the liability of those corporations to which the state canals were sold to pay taxes ; and the body of the act provides that they shall, '*hereafter*,' be subject to the

payment of a tax on their capital stock, and the second section renders them liable to the penalties imposed by the Act of April 21st 1858 for a failure to make report and furnish an appraisement. As we conceive, no reasonable doubt could ever have existed as to all of these corporations being subject to the payment of taxes, and bound to make reports as others are required to do. There was no necessity whatever for the law, and there is nothing in its words which releases them from the responsibility fixed upon them by the former statutes. Laws cannot be repealed by implication, nor should a declaratory act be so construed as to relieve a party from a clear fixed liability. This Act of Assembly could not be plead by the corporation as a release from the payment of taxes imposed by former laws. A mistake in the auditor-general's office, probably made by some clerk, first led to the supposition that no tax was imposed on the stock of any of these corporations, transferrees of the public works, and the misapprehension which must, in law, be attributed to the officer, caused them to escape until the legislature acted on the subject. It would·have been better to have so worded the enactment as to have made them liable for the past, as well as the future, and required the arrears to be paid as well as the subsequent tax, but possibly the legislature did not take time to examine the matter, and took it for granted that there were serious doubts, and that they could not be compelled to pay if not previously liable, which would have been correct. As we view it, they were all liable from the date of their charter of incorporation, and this law did not relieve them. The charge of arrears of taxes for the years 1858-'9-'60 is therefore right, as settled by the department. Must interest be paid on these arrears after three months from the date of settlement? The Act of 1811 provides that ' all balances due the Commonwealth, on accounts settled agreeably to this act, shall bear interest from three months after date of settlement until paid.' Had no erroneous items been taken into this account, and the ' balance' struck by the accounting officers been sustained, there could have been no question on this subject. A portion of the charge has been rejected by our·decision, and the defendant has, in part, sustained its appeal. The *balance* as struck was not due. The company could not lawfully know what amount to pay or tender, and therefore cannot be required to pay interest. The amount actually due is for the first time fixed on the trial, and interest can, therefore, only be allowed on the judgment. As already stated, in regard to the penalties, we do not consider that there was such default on the part of this corporation in failing to pay its taxes, after the decision of the auditor-general, and the action of the legislature, as will subject it to the payment of interest. There must consequently be deducted from the verdict the sum of $470.96, allowed as arrears of interest, and the ver-

dict corrected according to the point reserved, and the amount for which it should have been rendered is now fixed at $9846, for which the clerk is directed to enter judgment, as of the 29th day of November 1864."

To this the following errors were assigned for the Commonwealth·:—

The court below erred in deciding,

1. That the defendants were not liable to the payment of the sum of $984.63 ; that being the amount of the ten per cent. added to the tax for the years 1858, 1859, and 1860, and charged in the account, for failing to make report to the auditor-general on or before the 31st December of each of said years, as provided by Act of April 21st 1858.

2. That defendants were not liable to the payment of interest from three months after the date of the settlement upon such sum as might be found due upon said settlement, but that interest could be computed only upon said sum from the time the rendition of the judgment therefor.

The defendant also averred that the court erred in deciding that " the charge of arrears of taxes for the years 1858, 1859, and 1860 is therefore right, as settled by the department."

*W. M. Meredith*, for the Commonwealth.

*John C. Knox*, for the company.

The opinion of the court was delivered, May 25th 1865, by

THOMPSON, J.—The canal company whose writ of error is first in order, complains, that the court below erred in holding them answerable for the taxes charged against them by the settlement of their accounts in the auditor-general's office, on November 12th 1863, for the years 1858, 1859, and 1860. The ground of objection to the ruling of the learned judge seems to be : first, that by the Act of May 1st 1861 they were, in effect, declared unanswerable for any prior tax; and secondly, that the action of the accounting officers of the state, in omitting to charge them with taxes for the years mentioned, although they regularly settled their accounts for corporation taxes subsequently to the passage of the act, operated as a release.

The Act of May 1st 1861 was a declaratory act and nothing more. It appears from the preamble that its purpose was to remove doubts which had arisen, whether the companies and associations mentioned " should pay to the Commonwealth like taxes as are now imposed upon *corporations of a similar character*."

Even this preamble treats the companies and associations named as corporations. The doubts to be removed were, whether they, like " corporations of a similar character, should pay like taxes."

[Delaware Division Canal Co. *v.* Commonwealth.]

But while it is not, perhaps, absolutely necessary to this decision, to spend much time to prove them corporations, for they do not deny it, nor does the Commonwealth, yet it illustrates an idea necessary to a view to be taken of this legislation, to express an opinion on that point. By the Act of 21st April 1858, "for the sale of the state canals," it is amongst other things provided, that "the Sunbury and Erie Railroad Company shall have authority to grant, sell, and convey, or to lease for a term of years, the whole or any part of the said property to any corporation of this state, or to any association of individuals; and their *grantees shall hold and enjoy the same, together with all the rights, privileges, and franchises granted by the act to the Sunbury and Erie Railroad Company, and under such corporate name as said grantees may adopt,*" and these provisions are followed by others important to them as corporators.

The Sunbury and Erie Railroad Company sold to an association of individuals, who by purchasing became, under the authority of the act, a corporation. What matters it, that the terms of incorporation are less formal than usual? The intention to create the association of individuals, who might purchase any of the public works, a corporation, is not only apparent in the act, but it is manifest that such an organization was absolutely necessary to the management and enjoyment of such a property. The terms of the act affecting the question have been quoted. They are that the purchasers, whether an association of individuals or a corporation, are to be invested with all the rights, privileges, and *franchises* of their grantors, the Sunbury and Erie Railroad Company; and in case of an association, they are authorized to choose or adopt a corporate name for themselves. Thus, by relation to powers in existence in the grantors, the grantees were to be invested with the powers of and to become a corporation. It seems to be impossible to doubt of this. Yet doubt did exist in regard to this matter in the auditor-general's office; for on December 7th 1859 that officer expressed the opinion to this company, that they were not taxable under the Act of 1844. To remove these doubts for the future was mainly the object of the Act of May 1st 1861. It does not, in any express terms, touch the question of past liability: does it by necessary implication? I would answer, certainly not, unless there is a repeal by implication of the precedent statute, requiring the payment of these taxes. The rule is that an ancient statute will be impliedly repealed by a more modern one, only where the latter is couched in negative terms, or where the matter is so clearly repugnant that it necessarily implies a negative. Implied repeals are not favoured: Dwarris on Statutes 638, 673; Rex *v.* Barton, 12 A. & E. 470. The Act of 1859 was not affected by any repugnancy between it and the Act of 1861. The latter act declared the former to be

the rule of taxation in the future, and said nothing about its operation in the past.    That was left where the act found it.    It was for the courts to say whether there were any doubts insoluble, as to the liability of these companies, prior to the passage of the act, and for taxes between their incorporation and its passage.    The proper tribunal has had jurisdiction of that question, and has determined that they are liable for the taxes, and are not relieved from its payment by anything, express or implied, in the act; and we entirely approve of the conclusion not only for the reasons given there, but for the foregoing.

The second reason for non-liability of this company, viz. that the accounting officers thought so and omitted to charge the tax for the years mentioned, needs but little remark.    The mistakes or misapprehensions of these officers could not prejudice the Commonwealth: Easton Bank *v*. The Commonwealth, 10 Barr 443. In many particulars and principles, this case resembles the one in hand.    That was a case of pretermitted settlement of a claim against the bank.    It arose in 1835, '36, and '37, and was settled in 1847.    The omission of the accounting officers to settle was held to be no relinquishment of the claim, under a new statute, mistakenly supposed not to be in force for two years after it really was in force.    The receipt of the tax under the former law for these two years, was held not to bar the Commonwealth from going back ten years and more, and settling anew the accounts of the omitted tax.    That is a much stronger case than this, and rules it.    We see no ground for complaint on part of the company, and affirm the rulings below against them accordingly.

We must now turn attention to the Commonwealth's exceptions in this case.    And the first involves the question of the right of the Commonwealth to claim, as against the company, ten per cent. for failing to make returns to the auditor-general on or before the 31st of December of each year, according to the Act of April 21st 1858.    The learned judge in the court below was of opinion that the penalty should not be allowed under the circumstances of the case: in other words, that the company had not neglected or refused to furnish the required reports according to the terms of the statute.

There can be no question that this ten per cent. for failing to report is a penalty, and as such, not usually favoured in law.    It is imposed in the act as a consequence of the neglect or refusal of the officers to make the requisite returns within the time specified. This undoubtedly implies a necessity of judging from the facts whether there was a refusal or negligence in making the return. There is no evidence of any *refusal* here, for there was no demand for a return.    Was there any negligence in the case?    The undisputed facts are, that the company were seeking for information from the department in order to make their returns in 1858, when

on the 7th of December of that year they were informed by the auditor-general that their company was not taxable under the Act of 1844. Thus the matter rested until after the passage of the Act of May 1st 1861, and after that they made their returns promptly enough, so far as we learn, and paid their taxes without being informed that they were in default for the years mentioned.

It is difficult to deduce neglect from such circumstances; indeed impossible. Had the company sent their return, accompanied by the cash to pay their taxes, the auditor-general, as a conscientious man, would not have received it, holding the opinion he did, and yet a willingness to comply with the law which required reports would have been no more clearly deducible from this, than that which actually occurred. The Commonwealth is only entitled to the percentage as a result of the negligence or disobedience of the company: but to hold the company liable, not for their own default, but for the mistakes of the agents of the Commonwealth, is not to hold them so on the terms of the act, but in disregard of them. If they neither refused nor neglected to make the required return, it is no matter in what way they may have been prevented; the forfeiture does not accrue. The argument that the mistakes of the officers of the state shall not prejudice her rights, is misapplied in this case. She had no right to the penalty, if the condition on which it was to be paid never occurred, and if her agents prevented the party from escaping a claim for it, it was not the party's fault but her own. In an individual, such a process to produce a forfeiture would be disallowed, on the maxim that no one shall be permitted to take advantage of his own wrong. I entirely agree with the learned judge below, that it is repugnant to our sense of justice, even if there were some technical default on part of the company, in not repeating their offer of reports under the circumstances, to insist on the penalty. Until they were notified by the auditor-general that they had been misled in relation to the required reports by himself, they might rely on his decision, without the imputation of having refused or neglected their duty in the matter. We find no error in the ruling of the court on this point.

As to the question of interest on the account settled in the auditor-general's office, we differ essentially from the learned judge below. We think it should have been allowed upon all that was found due and owing at the trial of the appeal, after three months from the date of the settlement completed in the auditor-general's office. Why should the Commonwealth be subject to the loss of interest on her just dues, because she has failed to establish something that was erroneously included in the settlement? Such a principle exists nowhere that I can discover. The Easton Bank *v.* The Commonwealth, 10 Barr 443, gives a very different rule  The interest should have been allowed. We

must therefore reverse the judgment entered on the point reserved as to the interest, and enter judgment on the verdict.

Now, to wit, May 25th 1865, judgment reversed and judgment on the verdict for $10,317.87 is now entered against the defendants, and in favour of the 'Commonwealth with costs.