Commonwealth, Appellant, *v.* Taylor's Exr.

Argued May 27, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Philip S. Moyer,* Deputy Attorney General, with him *James W. Shull,* Deputy Attorney General, and *Cyrus E. Woods,* Attorney General, for appellant.—The decision of New York State Tax Commission of August 4, 1927, and the collection of inheritance tax by it on the intangible property in New York of Pennsylvania decedents, violated the intent of the Pennsylvania Act of May 14, 1925, P. L. 717, as to reciprocity.

Laws of New York did not provide for a like exemption from inheritance taxes on intangible property owned

by nonresident decedents of Pennsylvania during period in question as was provided by Pennsylvania Act of May 14, 1925, for deceased residents of other states.

One of the most important cases where the question was raised as to the separability of parts of a statute where the main part of the statute has been found to be unconstitutional, is Pollock v. Farmers Loan & Trust Co., 157 U. S. 429, 158 U. S. 601.

*R. M. Remick* of *Saul, Ewing, Remick & Saul,* with him *Nauman & Smith* and *Cadwalader, Wickersham & Taft,* for appellee.—Neither on December 4, 1925, the date of the death of the decedent, nor at any time since that date, has there been any tax legally imposed by the State of New York on the transfer of stock in New York corporations held by residents of the Commonwealth of Pennsylvania dying within that period, because:

(a) Section 248-p of article 10-A of chapter 143 of the laws of New York, session of 1925, specifically provided for reciprocity between the states.

(b) This section 248-p of the New York Act was not affected by the decision of the court in Smith v. Loughman, 245 N. Y. 486.

(c) The New York Act of March 12, 1928, reinstated reciprocity in that state, making it effective at the date of Henry R. Taylor's death, December 4, 1925.

(d) The reciprocity provisions of the Pennsylvania Act of May 14, 1925, P. L. 717, were therefore in full force and effect as regards New York decedents.

Specifically in this case, the Commonwealth of Pennsylvania has lost the right to impose any tax by its specific waiver and disclaimer on March 8, 1926, of all taxes on the transfer of Pennsylvania stocks by the executors of the estate of Henry R. Taylor, deceased, whereupon and whereby all such stocks were transferred out of the name of the decedent.

OPINION BY MR. JUSTICE SIMPSON, July 1, 1929:

Henry R. Taylor, a resident of the State of New York, died December 4, 1925, owning a large number of shares of stock of Pennsylvania corporations. By section 1 of the Act of June 20, 1919, P. L. 521, a transfer inheritance tax is imposed upon the transfer of such shares by decedent's estates. Under section 25 of the statute (P. L. 527), the auditor general appointed an official "to appraise the value of said property," and, from his appraisement, defendant, the surviving executor of Taylor's will, appealed to the Court of Common Pleas of Dauphin County, as authorized by section 27 of the act (P. L. 528). That court erroneously held that the appraisement was null and void and decreed that it should be set aside, whereupon the Commonwealth prosecuted the present appeal.

Prior to the passage of the statutes hereinafter referred to, testator's estate would admittedly have been liable, under the Act of 1919, supra, but defendant avers they operate to relieve it from liability. The legislature of New York, by an act passed March 16, 1925, but to take effect July 1, 1925, (chapter 143, paragraph 9, of the Laws of New York for 1925, page 166) altered its theretofore existing law, which imposed the same transfer inheritance tax on estates of nonresident decedents as it did on those of resident decedents, by assessing the tax differently in the two classes of cases, and then provided, in the same statute, that *"The tax imposed by this article* in repect of personal property shall not be payable......if the laws of the state or territory of residence of the transferor at the time of the transfer contained a reciprocal provision under which nonresidents were exempted from transfer taxes or death taxes of every character in respect of personal property, providing the state or territory of residence of such nonresidents allowed a similar exemption to the state or territory of the residence of such transferor." Following this, our Act of May 14, 1925, P. L. 717, 718, amended

section 1 of our Act of 1919, supra, by adding thereto a paragraph stating that "Personal property of a nonresident decedent made taxable under this section shall not be subject to the tax so imposed if a like exemption is made by the laws of the state or country of the decedent's residence in favor of residents of this Commonwealth."

If the New York Act of 1925, supra, had been valid, and the estates of Pennsylvania decedents had been exempted from liability, as seemingly therein provided, our Act of 1925, supra, would have relieved testator's estate from the tax under consideration. Unfortunately, however, in Smith v. Laughman, 245 N. Y. 486, the Court of Appeals of New York decided that the amendatory provision of their statute resulted in a discrimination between estates of residents and those of nonresidents, in violation of so much of article IV, section 2, of the Constitution of the United States, as provides that "the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." The court did not directly pass upon the reciprocal provision above quoted, because it was not necessary so to do; but, after stating (page 496) that "much has been said in argument" as to the two points standing or falling together, says that "We are not to whittle it [article IV, section 2, above quoted] down by refinement of exception, or by the implication of reciprocal advantage that is merely trivial or specious. The principle is put in jeopardy—there is set in it an entering wedge that may be the beginning of its destruction— if this statute is upheld." The Supreme Court of the United States refused to allow a writ of certiorari to the judgment in this case: 275 U. S. 560.

As a result of that opinion, the acting attorney general of New York at once notified its State Tax Commission (which is its tax administrative tribunal) that the effect of the decision was to destroy the reciprocal provision of their statute, and required the collection, as had been done prior to 1925, of a stock transfer tax on es-

tates of nonresidents, where the transfer had not already been made; and this opinion was followed until the passage of their Act of 1928, hereinafter referred to. In turn, the New York State Tax Commission notified the auditor general of this state of the decision in that case, of the opinion of their acting attorney general, and of their intention to follow it, whereupon the auditor general, believing that he was compelled thereto by our Act of 1925, supra, followed the same course, and collected for this State (and we still have in our treasury) more than a million dollars of transfer inheritance taxes, paid by the estates of New York decedents, who died between July 1, 1925, when their unconstitutional statute went into effect, and March 12, 1928, the effective date of their new statute, now to be cited.

By chapter 330, of the Laws of New York for 1928, page 825, 839, their legislature, on March 12, 1928, repealed so much of their Act of 1925, as caused it to be declared unconstitutional, and authorized a readjustment and refund of the transfer inheritance taxes collected from the estates of nonresident decedents ad interim, if their states made provisions to refund to the estates of New York decedents the like taxes collected by them during that time (section 11, page 838); but expressly declared. that otherwise "estates of decedents residents of such states dying during said period and prior to the time this act takes effect, shall not be entitled to reciprocal exemptions but shall be taxable under article 10-a of the tax law as enacted and made retroactive by this act." We have passed no such reciprocal legislation; and hence New York retains the money already collected by it, and will continue to charge and enforce its stock transfer tax against the estates of Pennsylvania decedents who died between July 1, 1925, and March 12, 1928. If defendant's contention as to the construction which should be placed on the New York Act of 1925 is the correct one, then their Act of 1928 is, in effect, an amendment to it, for the New York authori-

ties, in the light of the above-quoted prohibitory provision in the latter act, would not be justified in refunding any money to the estates of Pennsylvania decedents, unless we made a like provision as to the estates of their decedents. For this reason, the New York State Tax Commission has announced that it will not do so unless we shall "refund any taxes which may have been collected from estates of residents of New York dying prior to said date, contrary to the reciprocal principle as made retroactive" by their Act of 1928. It follows that as our Act of 1925 only applies to states having valid reciprocal provisions, which New York has not, until and unless we comply with a condition, which we cannot now fulfil, our statute is not applicable to the existing situation, and defendant is not entitled to the reciprocity tendered thereby, its testator having died, as stated, on December 4, 1925.

The opinion of the court below, reaching an opposite conclusion, follows the reasoning of the Supreme Court of New York (a tribunal occupying, in their judicial system, the same situation as the courts of common pleas do in ours) in Farmers Loan & Trust Co. v. New York Central R. R. Co. (not officially reported), which decided that Smith v. Loughman, supra, did not invalidate the reciprocal provision of the New York Act of 1925. Each court so determined by treating the words "imposed by this article," in the first sentence of that statute, as wholly nugatory; by not even referring to the New York Act of 1928, above cited, though each decision was rendered after its passage; and, while briefly noting what the Court of Appeals of New York said in Smith v. Loughman, supra, regarding the possible effect of its decision upon the reciprocal provisions of their statute, treated it as so purely incidental to the main question decided, as to render its further consideration unnecessary. Only the Court of Appeals of New York can ultimately determine whether or not Farmers Loan & Trust Co. v. New York Central R. R. Co., was properly de-

cided, and it is unimportant now what the final decision may be.* Under their Act of 1928, New York will not refund the transfer inheritance taxes collected by it from estates of Pennsylvania decedents, who died between July 1, 1925, and March 12, 1928, unless we make provision for the return of the transfer inheritance taxes collected by us from the estates of New York decedents who died between those dates. Such a provision cannot be made by this Commonwealth, save by a statute. Such legislation has not been enacted, and may never be; a bill to that end was presented to the last legislature, but was not passed by it. Hence, as actual reciprocity is that for which the statutes of both states attempt to provide, not an unenforceable right to reciprocity, which is what defendant claims already exists, our taxing authorities should continue to collect such transfer inheritance taxes from the estates of New York decedents who died between the dates stated, until our legislature chooses to make provision for the return of the taxes collected by us from the estates of New York decedents who died between these dates.

Defendant raises another point, not passed upon by the court below, which is directly in the line of the Commonwealth's right to recover, and must, therefore, be decided by us. When defendant's testator died he owned stocks in Pennsylvania corporations of the value of $4,-546,029.61. Before the decision in Smith v. Loughman, supra, defendant applied to the auditor general of this Commonwealth for a paper authorizing the Pennsylvania corporations to transfer those shares. Supposing the New York Act of 1925 to be constitutional, and hence that reciprocity would be there enforced, he replied that

---

* We have been advised, since the argument in this case, that the appellate division of the Supreme Court of New York (the judicial equivalent, so far as concerns appeals in this and similar cases, of the court in banc of one of our courts of common pleas) has affirmed, without an opinion, the decision of its Supreme Court.

no consent from his office was required. Defendant thereupon transferred stocks of the value of $4,218,750, from the name of its testator to itself as executor and trustee, and they are still so held, their further transfer being restrained by injunction, at the suit of the Commonwealth, pending the decision of this case. The other ten per cent were sold to outside parties. Defendant's contention is, in effect, that the letter of the auditor general operated to altogether estop the Commonwealth. No authority is given for this contention and we know of none. As a sovereign state we cannot be thus estopped, so long as the great body of the stock is still in the possession of the one who urges the estoppel, and its transfer is subject to the control of our courts: Delaware Division Canal Co. v. Com., 50 Pa. 399, 408; Com. v. Central National Bank, 293 Pa. 404, 408. A different question would arise if there was statutory authority authorizing the auditor general to waive the Commonwealth's right in cases where the allegation is that it has no claim because of the reciprocity provision referred to; but there is none. Moreover, as the executors and "trustees were not misled to their prejudice, there is no basis for a claim of estoppel" (Atchison v. United Presbyterian Board of Publication, 266 Pa. 47, 52) ; and so, also, no estoppel could arise since all the parties had the same knowledge regarding the constitutionality and effect of the New York Act of 1925, and of all that might be done, affecting reciprocity, by the officials of that state: Osterling v. Frick, 284 Pa. 397; Tustin v. Phila. & Reading Coal & Iron Co., 250 Pa. 425.

The decree of the court below is reversed at the cost of appellee as executor and trustee, and the record is remitted with a direction to enter judgment in favor of the Commonwealth for such an amount as shall be found to be payable under the agreement of the parties.