Platt et al., Executors, *v.* Wagner et al., Appellants.

Argued March 22, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Harry F. Stambaugh,* with him *Carl F. Chronister* and *Benjamin B. Bastian,* Assistant Deputy Attorneys General, and *James H. Duff,* Attorney General, for appellants.

*John Y. Scott* and *John H. Fertig,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, April 19, 1943:

Jane Livingston Armour, a resident of the State of New York, died on February 22, 1928. The Auditor General assessed a transfer inheritance tax against her estate in the sum of $2,726.69 because of her ownership of the shares of certain Pennsylvania corporations. On May 3, 1928, her executors paid this amount to the State Treasurer. On July 6, 1932, they filed a petition with the Board of Finance and Revenue for a refund of the tax. For some reason not apparent the Board withheld action on this petition for a period of ten years, but finally, on June 4, 1942, made an order refusing it. The executors then filed a petition in the Court of Common Pleas of Dauphin County for a writ of mandamus to compel the Board to allow the refund. On a demurrer to the Board's return to the writ the court entered judgment in favor of the executors. The Board appeals.

The entangled facts giving rise to this controversy had their inception in a misinterpretation by the taxing authorities of New York of the laws of that State; the statutes, judicial opinions and administrative rulings which followed served only to accentuate the original misunderstanding and to increase the confusion. Unfortunately, the legislative action necessary to remedy the situation has not been taken, with the result that the claim of the Armour Estate to this refund cannot be allowed and the decree of the court below must be reversed.

In New York the Act of March 16, 1925, c. 143, section 248-p, and in Pennsylvania the Act of May 14, 1925, P. L. 717 (amending the Act of June 20, 1919, P. L. 521), each contained a provision to the effect that personal property of a non-resident decedent should not be subject to transfer inheritance tax if the laws of the state of the decedent's residence contained a reciprocal exemption

provision. In pursuance of this legislation exemptions were allowed by each of these states to estates of deceased residents of the other until July 20, 1927, when the Court of Appeals of New York, in the case of *Smith v. Loughman*, 245 N. Y. 486, 157 N. E. 753, held the major portion of the Act of March 16, 1925, unconstitutional. Thereupon, laboring under the mistaken impression that this decision invalidated also the reciprocity provision of that act, the New York State Tax Commission ruled that a stock transfer tax on estates of non-residents should be collected, and notified the Auditor General of Pennsylvania of its intention to make such collections. The result was that Pennsylvania proceeded to follow the same course and to collect transfer inheritance taxes[1] from the estates of New York decedents who died between July 1, 1925, (which was the effective date of the Act of March 16, 1925), and March 12, 1928, the date of the New York statute hereinafter referred to. Thus, whatever the provisions in the laws of the two states, reciprocity in fact had ceased.

On March 12, 1928, New York passed a new transfer inheritance tax act (c. 330) which avoided the unconstitutional features of the 1925 act, re-enacted, retroactive to July 1, 1925, the provision for reciprocal exemptions, and authorized a refund of taxes collected under the 1925 act from estates of non-resident decedents which should have been entitled to exemption under that act; such retroactive exemptions and such refunds were not to be made, however, if the state where the decedent was a resident had collected taxes from estates of New York decedents dying during the period for which exemption

---

[1] These collections amounted, according to a statement in the opinion of Mr. Justice SIMPSON in *Commonwealth v. Taylor's Executor*, 297 Pa. 335, 340, 147 A. 71, 73, to more than a million dollars. The amount collected by New York from the estates of Pennsylvania decedents during the same period is not disclosed in the record.

was now being retroactively established and "shall not make provision for the refunding of the same."

In 1929 there came before this court the case of *Commonwealth v. Taylor's Executor*, 297 Pa. 335, 147 A. 71, in which Mr. Justice SIMPSON in his opinion pointed out that the condition on which New York thus agreed to make refunds had not been complied with, that our state had not enacted the necessary legislation for refunding inheritance taxes imposed by it on estates of New York decedents collected after the *Smith v. Loughman* decision, and that not only had New York made no refunds under its 1928 act but its State Tax Commission had announced that it would not do so unless similar refunds were made by Pennsylvania. Under such circumstances it was held that actual reciprocity between the two states did not exist and that "our taxing authorities should continue to collect such transfer inheritance taxes from the estates of New York decedents who died between the dates stated [July 1, 1925, and March 12, 1928], until our legislature chooses to make provision for the return of the taxes collected by us from the estates of New York decedents who died between these dates."[2]

The next complication in the situation resulted from the decision of the New York Court of Appeals in February, 1930, in the case of *City Bank Farmers' Trust Co. v. New York Central R. R. Co.*, 253 N. Y. 49, 170 N. E. 489, in which it was held that the decision in *Smith v. Loughman* did not invalidate the reciprocity provision of the Act of March 16, 1925, that the position taken by the State Tax Commission was incorrect, that reciprocity had legally existed at all times since the Act of 1925, and that the condition attached to the retroactive ex-

---

[2] It will be borne in mind that the misunderstanding between the two states which is here discussed is concerned only with the three-year period mentioned. As to estates of decedents dying since March 12, 1928, reciprocity in exemptions has existed between Pennsylvania and New York both in law and in fact.

emption provision of the Act of 1928 was invalid; however, since Pennsylvania had held in the Taylor case that transfer inheritance taxes should be imposed upon the estates of New York decedents, New York was bound by that decision, and therefore a corporation incorporated in Pennsylvania was not subject to a duty of transferring shares of stock owned by the estate of a New York decedent without exacting proof of the payment of transfer taxes thereon to Pennsylvania. In May, 1930, the Attorney General of New York advised the State Tax Commission that until Pennsylvania changed its attitude the Commission would be proceeding in accordance with the court's opinion if it collected taxes and withheld refunds upon the basis that reciprocal exemption from inheritance taxation did not exist between the two states during the period from July 1, 1925, to March 12, 1928, inclusive.

A re-argument having been allowed by this court in the Taylor case, it was stated by Mr. Justice SIMPSON, who again wrote the opinion of the Court (*Commonwealth v. Farmers Loan & Trust Co., Executor and Trustee,* 301 Pa. 114, 151 A. 692), that whatever the construction placed by the New York Court of Appeals upon the law of that state, the fact was, because of this advice given by its Attorney General, that "the estates of Pennsylvania decedents cannot now recover back the taxes heretofore paid, nor successfully claim exemption from future demands for payment, if their testators died between the dates stated, no matter what they may have done or may do"; furthermore, that no refunding could be made by the treasurer of Pennsylvania to the estates of New York decedents who died between the dates stated until and unless an enabling statute was passed by our legislature; it was reiterated that actual reciprocity had not existed between the two states since the decision in *Smith v. Loughman.* However, the court withheld final decision in the case "until each state has had the opportunity to *re-establish* full reciprocity, by providing,

*through appropriate legislation,* that all the money actually paid to it by the estates of decedents who were resident in the other, for the taxes exempted by these reciprocity statutes, will be returned to those estates, whether or not they complied with the then existing laws relating to the recovery back of such payments."

The situation had thus reached an impasse. New York refused to refund unless Pennsylvania would refund, and our legislature passed no act for that purpose.

On April 3, 1931, a law was enacted in New York (c. 252) which provided that reciprocal relationship with other states in regard to inheritance tax exemptions should be reinstated and be effective for the period between July 1, 1925, and March 12, 1928, if and when such other state "shall make provision for refunding to estates of New York decedents the amounts of death taxes collected from such estates contrary to such reciprocal relationship, and thereupon the State Tax Commission . . . shall be authorized to refund to estates of decedents of said state dying during said period . . . the amounts collected as death taxes by the State of New York contrary to such reciprocal relationship." It will be noted that this act, like that of 1928, authorized refunding only if the other state should make provision for similar refunding—which left matters exactly as they were before. At the session of the Pennsylvania legislature in 1931 a bill passed both houses providing for the making of such refunds, but it was vetoed by Governor Pinchot.

On July 3, 1931, the Attorney General of Pennsylvania entered into a written stipulation with counsel for the Taylor estate reciting that the New York act of 1931 had re-established reciprocity between the two states for the period during which such reciprocity had been suspended, and agreeing that final judgment might therefore be entered in the *Taylor* case in favor of the executors against the Commonwealth. Accordingly this court made an order as follows: *"Because of the fore-*

*going agreement* judgment is hereby entered in the above case in favor of the defendant and against the plaintiff."

This recital of the facts may be completed by the statement that no appropriation has ever been made by Pennsylvania to refund the taxes collected by it from New York estates, nor has the State of New York refunded any taxes collected by it from Pennsylvania estates, in cases where the decedent died between July 1, 1925, and March 12, 1928.

It is the contention of plaintiffs, the executors of the Armour Estate, that reciprocity did in fact exist at the time of the death of their decedent on February 22, 1928, and that therefore they are entitled to the refund claimed by them. Their position is based upon two arguments: (1) That the entry of the judgment in the Taylor case constituted a decision by this Court that reciprocity had been re-established for the period in controversy; and (2) that the condition contained in the refunding provisions of the New York Acts of 1928 and 1931 was met in Pennsylvania by section 503 of the Fiscal Code of April 9, 1929, P. L. 343, which imposed the duty upon the Board of Finance and Revenue to hear and determine petitions for the refund of taxes alleged to have been paid to the Commonwealth as the result of an error of law or of fact,[3] and, upon the allowance of any such petition, to refund such taxes "out of any appropriation or appropriations made for the purpose, or to credit the account of the person . . . entitled to the refund."

As to the first of these contentions it is sufficient to say that the judgment entered in the *Taylor* case involved no judicial determination by this Court of the facts or the law there in controversy. It in no way modified the statement of Mr. Justice SIMPSON that actual reciprocity did not exist during the period in question

---

[3] By the amendatory Act of June 7, 1935, P. L. 283, section 2, the duty imposed on the Board is to hear and determine any petition for the refund of taxes paid to the Commonwealth "and to which the Commonwealth is not rightfully or equitably entitled."

and that a decision on the appeal was being deferred only in order to give each state the opportunity to re-establish such reciprocity by providing through appropriate legislation for the refund of the taxes it had collected. It was expressly stated that the judgment was entered because of the agreement which had been entered into by counsel. Being but a consent-judgment it was in no sense a decision of this Court that the New York Act of 1931 had re-established actual reciprocity and that therefore the Taylor estate was entitled to a refund.

The second of plaintiffs' contentions—that the condition on which the New York acts of 1928 and 1931 authorized refunding was complied with in Pennsylvania by the Fiscal Code of April 9, 1929, P. L. 343, section 503—likewise fails. All that section 503 provides is, as already stated, that, if the Board of Finance and Revenue allows a petition for refund of taxes, it shall make the refund "out of any appropriation or appropriations made for the purpose" or "credit the account of the person . . . entitled to the refund." As Pennsylvania has never made any appropriation for the purpose this section would not permit an actual refund in cash, and, as far as the giving of a credit is concerned, since the estate of a non-resident decedent would obviously have no practical use for such a credit, it would be obliged, in order to realize any benefit therefrom, to attempt to sell the credit to some other taxpayer who might then be or thereafter become obligated to the Commonwealth for the payment of taxes; as there would be no advantage to such other taxpayer to purchase the credit except at a substantial discount, the net result to the estate of the non-resident decedent would be that, if fortunate enough to find a purchaser at all, it might obtain, not a refund of "all the money actually paid" by it to the Commonwealth, which was the requisite for the re-establishment of reciprocity laid down by Mr. Justice SIMPSON in the *Taylor* case, but

only a portion of such money. No appropriation act having been enacted in Pennsylvania, no actual refund can be made, the stipulations in the New York Acts of 1928 and 1931 have not been met, New York has not in fact refunded any of the taxes paid by Pennsylvania estates, and the situation thus remains exactly as it was at the time both of the original argument and of the reargument in the Taylor case. It may be pointed out in passing that in the New York Act of 1931 the estates of Pennsylvania decedents were accorded only a little over a year from the date of that act in which to make applications for refunds, so that the time in which such applications could be made has long since expired.

The view we have thus taken on the merits makes it unnecessary to discuss at length whether the application by these plaintiffs for a refund was barred in any event by reason of the provision of section 503 of the Fiscal Code that a petition for that purpose must be filed with the Board within two years of the payment alleged to have been erroneously made. Plaintiffs' petition was filed long after the expiration of two years from the time they paid the tax. It is true it was filed within five years, and section 503 provides, by way of an exception, that the petition may be filed within five years of the payment in case the tax was paid under a provision of an Act of Assembly subsequently held by the court of final jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous. Here, however, there was no act held by this Court to be unconstitutional nor any interpretation thereof subsequently held by this Court to be erroneous, it having already been pointed out that the consent-judgment in the *Taylor* case was not a "holding" by this Court.

The decree is reversed at cost of appellees, and judgment is here entered for defendants.