## Etters v. State Employes' Retirement Board

*Leonard Tintner, Compton, Handler, Berman &
Boswell,* for appellant.

*Raymond Kleiman,* for State Employes' Retirement
Fund.

SHELLEY, J., September 21, 1964.—This matter
comes before us on an appeal from an adjudication of
the State Employes' Retirement Board (hereinafter
called the Board) pursuant to the provisions of the Ad-
ministrative Agency Law of June 4, 1945, P. L. 1388,
as amended, 71 PS §1710.1, et seq.

Milton W. Etters (hereinafter called appellant)
filed a petition on April 21, 1959, for a hearing before
the board on the question of whether, in view of his

military service, he was still a member of the State Employes' Retirement System. On August 7, 1961, the board adjudicated the matter and, on September 1, 1961, appellant filed exceptions to the adjudication and took an appeal to this court. Nothing further was done in the matter until argument before our court en banc on May 27, 1964.

In its adjudication the board made the following findings of fact:

"1. Milton W. Etters entered Commonwealth service in the predecessor to the Department of Public Assistance on May 6, 1935.[1]

"2. Etters remained continually in Commonwealth service with the Department of Public Assistance until July 3, 1942.

"3. On July 3, 1942, Etters left Commonwealth service on military leave without pay, having entered the United States Army as a private on June 17, 1942.

"4. Etters was commissioned a second lieutenant in the United States Army Air Force Reserve on December 9, 1942.

"5. Etters remained on active duty in the Army Air Force until January 17, 1947, at which time he was released to inactive duty with the rank of major, retaining his commission in the United States Air Force Reserve.

"6. Etters returned to Commonwealth service with the Department of Public Assistance on May 9, 1947.

"7. Early in 1948, Etters advised the military authorities that he wished to return to active duty.

"8. On August 28, 1948, Etters received orders recalling him to active service in the Air Force with the rank of captain.

---

[1] This date does not apear in the record. However, it is conceded by the parties in their respective briefs that this was the date of appellant's entry into State service.

"9. At this time, no reserve officers were being recalled to active duty except upon their own express request.

"10. On August 31, 1948, Etters left Commonwealth service on military leave without pay.[2]

"11. Etters is not an aviator and during his recalled service has engaged solely in administrative duties.

"12. Reserve officers on active duty can submit requests to resign their commission or to be released to inactive duty at any time. Such requests, if submitted at times other than during a state of war or national emergency, will be routinely accepted.

"13. From September 1, 1948, to the date of the administrative hearing, with the possible exception of the period from June 27, 1950, when United States forces were ordered into Korea, to July 27, 1953, the date of the Korean armistice, Etters voluntarily remained in military service as a matter of personal preference.

"14. On and after July 28, 1953, Etters could have resigned his commission or been released to inactive duty, if he so desired.[3]

"15. Etters is a beneficiary of the retirement laws affecting members of the United States armed forces."

The function of the court in reviewing a determination of an administrative body is not to substitute the court's judgment for that of the administrative body, but to determine whether there is lack of evidence to support the action taken by the administrative body:

---

[2] The record of appellant's testimony before the board indicates that this date should be August 28, 1948.

[3] The treaty of peace with Japan was signed on September 8, 1951, and ratified by the United States on March 20, 1952, and came into force on April 28, 1952. On June 25, 1950, the Republic of Korea was invaded and on June 27, 1950, United States troops were ordered into South Korea. Although there never was a declaration of war the Korean armistice was signed July 27, 1953.

Fery v. Pennsylvania Public Utility Commission, 192 Pa. Superior Ct. 331 (1960).

It is the court's province on an appeal from an administrative agency to determine the propriety of the agency's findings, which must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty. However, the court will examine, but not weigh, the evidence, since the fact-finding tribunal is in a better position than the court to pass upon elements of fact, dependent upon oral testimony, and the court may not substitute its judgment for that of the agency: Pennsylvania State Board of Medical Education and Licensure v. Ferry, 172 Pa. Superior Ct. 372 (1953).

The board concluded that section 1 of the Act of June 7, 1917, P. L. 600, rather than the Veterans Preference Act of July 8, 1957,[4] was applicable to the facts and circumstances of this case. Section 1 of the Act of 1917 provides that:

"Whenever any appointive officer or employe, regularly employed by the Commonwealth of Pennsylvania in its civil service, . . . *shall in time of war or contemplated war* enlist, enroll, or be drafted in the military or naval service of the United States, or any branch or unit thereof, he shall not be deemed or held to have thereby resigned from or abandoned his said office or employment, nor shall he be removable therefrom during the period of his service, but the duties of his said office or employment shall, if there is no other person authorized by law to perform the powers and duties of

---

[4] The Act of 1917 was repealed by section 10 of the Act of July 8, 1957, P. L. 557 (Veterans Preference Act) which became effective on July 8, 1957, the date of its enactment, and is only applicable to State employes who entered military service to satisfy military obligations. We can find no other statute save for the Act of 1917, which in any way preserved and protected the employment status of State employes.

such officer or employe during said period, be performed by a substitute, ..." (Italics supplied.)

The board concluded, and we think properly so, that the Act of 1917 was applicable to the facts and circumstances of this case because appellant's membership in the fund terminated prior to the passage of the Veterans Preference Act, supra.

The board relied on Formal Opinion No. 675 of the Attorney General,[5] which interpreted section 1 of the Act of 1917, and concluded that any employe who had reenlisted subsequent to July 27, 1953, had abandoned his right to be continued on a military leave and had abandoned his right to his former position upon his release from active military service. As a necessary consequence of the Attorney General's opinion, it followed that any employe within this category surrendered his membership in the retirement system. Appellant was in this category.

It is clear that in the construction of laws, the legislative intent controls and this may be ascertained by legislative and administrative interpretation of such laws, included, but not limited to Opinions of the Attorney General, which are entitled to great weight: Statutory Construction Act of May 28, 1937, P. L. 1019, as amended, 46 PS §551; McDowell v. Good Chevrolet-Cadillac, Inc., 397 Pa. 237 (1959).

The Attorney General's opinion specifically discussed the interpretation to be accorded the terminology "in time of . . . contemplated war" in the Act of 1917, and concluded that this condition did not exist at any time after July 27, 1953, although the ". . . possibility of war exists . . . in time of peace."

---

[5] The opinion of the Attorney General was dated November 14, 1956, and, while not reported in an official report, can be found in the Attorney General's office library in "1955-56 OP. Atty Gen at page 80." It was addressed to the Honorable Elmer D. Graper, Chairman, State Civil Service Commission.

Furthermore, although section 9 (b) of the Selective Service Act of 1948 (name changed to Universal Military Training and Service Act in 1951), 62 Stat. 614 50 U.S.C.A. App. §459, made it compulsory for a former employer to rehire any person "drafted" into the armed forces in time of war or contemplated war, such requirement was not applicable where there was no such state of events nor was this privilege required to be accorded persons in the employ of any States or political subdivisions.

The board found that appellant's military leave of absence was terminated on July 27, 1953, in view of the conclusion that there was no "contemplated war" thereafter and no other statute was operative at the time. The board correctly concluded that appellant chose to remain in the military service voluntarily after the Korean War and, therefore, terminated his membership in the system on that date. It is clear that appellant fits the category of a State employe within the Act of 1917 who "enlisted" in time of war or contemplated war, although he "re-enlisted" subsequent to the Korean War when there was no "contemplated war." Even assuming arguendo that appellant was ordered "involuntarily" to active duty in 1948, no other inference can be drawn from the testimony submitted to the board but that he chose to remain in military service after the Korean War as a matter of personal preference. This was the rationale which the board used in concluding that the cut-off date was July 27, 1953. For these reasons we conclude that the board was correct in holding that the Act of 1917 was applicable to the facts and circumstances of this case.

The facts, as found by the board, clearly suggest, within the concept of substantial evidence, that appellant returned to military service in 1948 as a matter of personal preference. Consequently, he was in military service during the course of the Korean War and

thereafter as a matter of personal preference. As a result, the board, relying on the Attorney General's opinion, reasoned that officers, as well as enlisted men who voluntarily continue in military service subsequent to July 27, 1953, were subject to that opinion and were considered to have abandoned their rights under the retirement system.

Considering the testimony as a whole, it sustains the conclusion that appellant reentered the Armed Forces of the United States on August 28, 1948, by expressing an interest in returning to active duty rather than remaining on inactive duty. This return to service lacked the element of emergency which is the one and only underlying factor which permits State employes to retain membership in the system and permits their reinstatement to State service upon their return from satisfying a military obligation. The right to membership in the system is not and should not be equated to career officers or enlisted men who choose to remain in military service as a matter of personal preference. The legislature certainly did not intend to grant valuable retirement benefits to persons based upon service in the United States Armed Forces rather than service to the Commonwealth. In fact, the intention is clear that the legislature sought to grant valuable retirement benefits to State employes who render long and faithful service to the Commonwealth and not to career personnel of the United States Armed Forces.

Although the board correctly concluded that appellant's status in the military service was voluntary and of a career nature so that he was precluded from retirement membership, nevertheless appellant raises several issues. He maintains that his position was of such military importance that he could not have been released had he requested it and, therefore, his status was an indefinite reserve one that compelled him to

remain in service. Appellant overlooks the fact that he made no attempt to return to State service and that his failure to do so was a tacit recognition of his desire to continue as a career military man and to seek all the benefits of that position. Furthermore, the Commonwealth, as an employer, had a right to expect that an employe who wishes to serve his employer must affirmatively make a decision to return. A State employe's right to the benefits of State service is not dependent upon the employe's indispensability to the Armed Forces, especially when no emergencies exist.

Appellant also argues that he was not a beneficiary of the retirement rights affecting members of the Armed Forces at the time of the hearing, but the fact remains that his eligibility for those benefits were accruing day by day, both during the Korean War, thereafter, and through the process of litigation right up to the present time.

Appellant submits for our consideration an interchange of correspondence between his last State employer, and himself, to the effect that his status as an employe on a military leave of absence was continuous and that a change was not contemplated. The correspondence was attached to appellant's brief. It appears nowhere in the record of this case, but an answer is suggested because of its introduction for our consideration.

Although this correspondence appears to suggest that the "equities" are in appellant's favor, nevertheless, he had no right to place reliance on this information. It is hornbook law that there is no estoppel running against the Commonwealth, especially where the matter is one involving an interpretation of law. Certainly, no officer of the Commonwealth has the authority to bind the sovereign and thereby grant valuable rights where none, in law, existed. See Fried v. Fisher 328 Pa. 497 (1938) ; Commonwealth v. Taylor's Exr.,

297 Pa. 335 (1929) ; Northwestern National Bank v. Commonwealth, 345 Pa. 192 (1942).

No weight or reliance can be placed on the fact that the board continued accepting contributions from appellant until he was notified that it was error, as a matter of law, to do so. Appellant is entitled to the return of his contributions with interest up to July 27, 1953.

Appellant is always eligible to return to State service, following his military career. If he returns, he is qualified to receive credit for prior State service, including all credited military service rendered during the years 1942-1953. He would also be eligible, after age 60, to receive a State annuity, if he returns to State service, based on all his years of credited service.

Considering what we have said heretofore, we conclude that the adjudication of the board is amply supported by the record within the meaning of the substantial evidence rule and that appellant's membership in the State Employes' Retirement System was terminated on July 28, 1953. We therefore make the following

### Order

And now, September 21, 1964, the adjudication of the board is affirmed; the exceptions of appellant are overruled and the appeal is dismissed at the cost of appellant.