## UNITED STATES EX REL. LOUISVILLE CEMENT COMPANY *v.* INTERSTATE COMMERCE COMMISSION.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

. No. 70. Argued March 14, 1918.—Decided April 29, 1918.

The provision of § 16 of the Act to Regulate Commerce that "all complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after," is not a mere statute of limitation but is jurisdictional.

The "cause of action accrues" to a shipper, within the meaning of this provision, when the unreasonable charges are paid, not when the shipment is received or delivered by the carrier:·

It having been definitely settled by prior decisions of this court that the time when a "cause of action accrues" is the time when suit may first be legally instituted upon it, it must be assumed that Congress, in using that expression without qualifying words, adopted the meaning thus attached to it.

In the absence of other modes of judicial review, the Supreme Court of the District of Columbia has power to direct the Interstate Commerce Commission by mandamus to entertain and proceed to adjudicate a cause which it has erroneously declared not to be within its jurisdiction.

42 App. D. C. 514, reversed.

THE case is stated in the opinion.

*Mr. J. Van Dyke Norman,* with whom *Mr. John S. Kelley, Jr.,* and *Mr. George H. Lamar* were on the brief, for plaintiff in error.

*Mr. Charles W. Needham,* with whom *Mr. Joseph W. Folk* was on the brief, for the Interstate Commerce Commission.

MR. JUSTICE CLARKE delivered the opinion of the court.

. The facts of this case are not disputed and are as follows:

By mistake in printing its tariff, the published rate of the Louisville & Nashville R. R. Co. on coal from mines in Kentucky to Speeds, Indiana, was increased on July 22, 1906, to $1.10 per ton from $1.00, which had been the rate before.

The mistake was not noticed and the old rate was charged and paid by relator (plaintiff in error) on shipments until the following February, when, the increased published rate being discovered, it was charged and collected until the next April, when the former rate was restored.

Promptly on April 19, 1907, the relator wrote the Interstate Commerce Commission, explaining the circumstances, and requesting that the railroad company be authorized to refund the overcharges paid, February 11th, to April 19, 1907, amounting to $595.65.

The Commission replied to this letter that if the railroad company would file with the Commission an admission that the rate had been increased through error and would ask for authority to make the refund, the subject would receive consideration.

This statement of the Commission was immediately communicated to the railroad company, but it refused to make the required admission of mistake and to request authority to make the refund until the full published rate was paid on shipments made before the mistake was discovered. This led to dispute and delay, with the result that these excess charges ($1,335.25) were not paid until February 1, 1911.

In the following November the relator filed its petition with the Commission asking for an order permitting the railroad company to refund the entire amount, in excess of the former rate, paid under the mistakenly published tariff.

The railroad company admitted that it never intended to increase the rate and consented that the reparation order prayed for should be issued.

The Commission found, as a matter of fact, that the mistakenly published rate of $1.10 was unreasonable to the extent that it exceeded $1.00 per ton, and then, holding that all complaints for the recovery of damages must be filed with the Commission within two years from the date of the delivery of the shipment, it ruled that the letter of the relator to the Commission of April 19, 1907, making claim for the overcharges which had been paid between February 11th, and April 10th, 1907, was sufficient to satisfy the law, and ultimately issued to the railroad company authority to pay this amount to the relator; but the Commission further held that the complaint for the recovery of the overcharges for the period prior to February 11th, although filed within nine months of the date of their payment, was not in time to meet the requirement of § 16 of the act that "All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after," and that "they [the overcharges] are therefore barred from our consideration."

The relator filed its petition for a writ of mandamus in the Supreme Court of the District of Columbia, which petition was denied, and the judgment of the Court of Appeals for the District affirming this holding is here for review.

The lower courts arrived at their conclusion by holding that the Commission entertained jurisdiction over the portion of the relator's claim which was rejected; that in the exercise of that jurisdiction it held the claim to be barred and that this was an exercise of discretion committed by law to the Commission which is not subject to control by the writ of mandamus.

We think the courts fell into error in thus interpreting the language used by the Commission in its report.

As to the portion of the claim which we are considering, the report of the Commission is as follows:

"The only question left for determination is whether the claim is barred, in whole or in part, by the following limitation of the Act: 'All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after.'

"The Commission holds that the date when the cause of action accrues is the date of the delivery of the shipment. *Blinn Lumber Co.* v. *Southern Pacific Co.*, 18 I. C. C. Rep. 430. . . . No complaint was filed by complainant [relator] with reference to shipments made before February 1, 1907, until the petition here in question was filed on November 15, 1911, and these shipments had all been delivered more than four years before the filing of that petition. They [the overcharges] are therefore barred from our consideration."

The concluding sentence thus used by the Commission that "They [the overcharges] are therefore barred from our consideration," implies that in the opinion of the Commission the two-year provision of the 16th section of the act is a limitation upon its power, and that the construction which it gave to this limitation placed the claim we are considering so beyond its jurisdiction that it could not consider it, and reference to the case cited as authority for its conclusion, *Blinn Lumber Co.* v. *Southern Pacific Co.*, 18 I. C. C. 430, makes it clear that such was the intended holding. In that case the Commission expresses its conclusion in this form:

"After careful consideration of the contentions of all parties . . . as to the right of the complainant" (after two years) "to maintain this proceeding for reparation before the Commission, it is our conclusion that we are *without power* to grant the relief prayed for."

And in *Anaconda Copper Mining Co.* v. *Chicago & Erie*

*R. R. Co.*, 19 I. C. C. 592, decided seven months later, the Commission makes a yet more emphatic announcement of its views upon the subject, saying:

"In this report only such shipments will be considered as moved within two years from the time the complaint embracing them was filed, and with respect to shipments moving prior to such two-year period we think it proper to state that, following the spirit as well as the letter of the limitation clause contained in section 16 of the act, we believe *we are without jurisdiction*, and therefore we will not make any finding whatever concerning such shipments or the rates and charges assessed thereon."

It is thus made very clear that the holding of the Commission was, not that having jurisdiction over the claim, upon consideration thereof, it was found to be barred by a statute of limitation, but that the language of the two-year provision of the act was jurisdictional and placed it so beyond its power that it could not be considered at all, and that, for this reason, the petition, to the extent it related to the overcharges paid on February 1, 1911, was dismissed.

We agree with this conclusion of the Commission, that the two-year provision of the act is not a mere statute of limitation but is jurisdictional,—is a limit set to the power of the Commission as distinguished from a rule of law for the guidance of it in reaching its conclusion (*Interstate Commerce Commission* v. *Northern Pacific Ry. Co.*, 216 U. S. 538, 544). That such was the opinion of this court was clearly intimated in *Phillips Co.* v. *Grand Trunk Western Ry. Co.*, 236 U. S. 662, 667, and it conforms in principle to the holdings of the court with respect to a similar limitation, but for six years, on the jurisdiction of the Court of Claims (*Ford* v. *United States*, 116 U. S. 213; *Finn* v. *United States*, 123 U. S. 227, 232; *United States* v. *Wardwell*, 172 U. S. 48, 52).

That the Supreme Court of the District of Columbia,

in a proper case, has power to direct the Commission by mandamus to entertain and proceed to adjudicate a cause which it has erroneously declared to be not within its jurisdiction is decided in *Interstate Commerce Commission* v. *Humboldt Steamship Co.*, 224 U. S. 474. If the Commission did so err, on the authority of many decisions, among them *Ex parte Russell*, 13 Wall. 664; *Ex parte Schollenberger*, 96 U. S. 369; *Hollon Parker, Petitioner*, 131 U. S. 221; *In re Grossmayer*, 177 U. S. 48, and *Interstate Commerce Commission* v. *Humboldt Steamship Co.*, 224 U. S. 474, 485, the courts may correct such error on a petition for mandamus, where, as in this case, the erroneous decision cannot be reviewed on appeal or writ of error.

There remains the question, Did the Commission place an erroneous interpretation upon the scope of its jurisdiction under this two-year provision in § 16 of the act, in excluding the claim which we have before us from its consideration?

This provision first appears in an amendment to the act, approved June 29, 1906, § 5, c. 3591, 34 Stat. 590; and in January, 1908, the Commission published as its construction of the limitation the following, viz:

"A cause of action accrues, as that phrase is used in the act, on the date the freight charges are actually paid."

The decisions of the Commission show (15 I. C. C. 201, 235, 533; 16 I. C. C. 385) that it adhered to this construction until May, 1910, when, in *Blinn Lumber Co.* v. *Southern Pacific Co.*, 18 I. C. C. 430, it changed its ruling and adopted the holding that the cause of action accrued when the shipment was delivered.

This change, as the report of the Commission shows, resulted not from any modification of opinion as to the meaning of the language used but from the conclusion of a majority of its members that such interpretation was necessary to give effect to other provisions of the act, especially those relating to rebates and undue preferences.

But this two-year provision, obviously enough, relates only to the recovery of money damages, and if Congress had intended that the cause of action of the shipper to recover damages for unreasonable charges should accrue when the shipment was received, or when it was delivered by the carrier, we cannot doubt that a simple and obvious form for expressing that intention would have been used, instead of the expression "from the time the cause of action accrues." And in this connection we cannot fail to recognize that when the statute was enacted the time when a cause of action accrues had been settled by repeated decisions of this court to be when a suit may first be legally instituted upon it (*Amy* v. *Dubuque*, 98 U. S. 470, 474; *United States* v. *Taylor*, 104 U. S. 216, 222; *Rice* v. *United States*, 122 U. S. 611, 617) and, since no clearly controlling language to the contrary is used, it must be assumed that Congress intended that this familar expression should be given the well understood meaning which had been given to it by this court. We therefore conclude, as was held, without special discussion of the point, in *Phillips Co.* v. *Grand Trunk Western Ry. Co.*, 236 U. S. 662, 666, 668, which in this respect really rules the case before us, that the proper construction of this jurisdictional provision requires that the cause of action of the shipper in this case shall be held not to have accrued until payment had been made of the unreasonable charges, and that, therefore, the interpretation which the Commission placed upon its jurisdictional power is erroneous.

The unusual and purely fortuitous circumstance, that the character of this jurisdictional limitation on the power of the Commission chances to be such that the giving of a correct construction to it must result in determining the character of the decision which the Commission must render when the case is returned to it, cannot affect the power of this court or that of the lower

courts to define what that jurisdiction is under the act of Congress or the duty of the Commission to accept and act upon such definition when announced.

It results that the judgment of the Court of Appeals must be reversed and that the case must be remanded to the Supreme Court of the District of Columbia, with direction that a writ of mandamus issue to the Commission, directing that it proceed to dispose of the claim in controversy under the construction placed upon its jurisdiction by this opinion.

*Reversed.*