### NEW YORK CENT. R. CO. v. LAZARUS et al.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

No. 89.

1. **Carriers ⬦160—Provision in Transportation Act, suspending "periods of limitation" during federal control, does not apply to contract period.**

The expression "periods of limitation," in Transportation Act Feb. 28, 1920, § 206f, providing that the period of federal control shall not be computed as part of the periods of limitation, applies to limitations fixed by federal or state statute, in view of section 206a, expressly providing that causes of action arising out of federal control may be brought within the periods of limitation prescribed by state or federal statutes, and of section 438, amending the provision relating to contract periods of limitation, but making no reference to the exclusion of the periods of federal control.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Period.]

2. **Carriers ⬦160—Minimum period of limitation permissible in bill of lading is fixed by contract, and not by statute.**

Where the bill of lading established the period of limitation for the commencement of action against the carrier at the minimum period permitted by Transportation Act Feb. 28, 1920, § 438, the limitation was nevertheless fixed by contract, and not by a statute, since the right to establish such period was not given by the statute, but was merely restricted thereby.

3. **Carriers ⬦63—Contract held subject to uniform bill of lading, though none was issued.**

Where an interstate carrier had on file two tariffs, one for shipments under the uniform bill of lading, and the other fixing a 10 per cent. higher rate for shipments subject to the carrier's common-law and statutory liability, a shipment of imported goods on which the freight was charged at the former rate was subject to the uniform bill of lading provisions, though no bill of lading was in fact issued.

4. **Constitutional law ⬦171—Suspension of contractual period of limitation would be unconstitutional.**

Though Congress can suspend the statute of limitations as to personal debts without depriving a debtor of his property, because such period did not become a part of the contract, a suspension of the time within which an action could be brought under the terms of the contract would be a violation of Const. Amend. 5.

In Error to the District Court of the United States for the Southern District of New York.

Action by Samuel O. Lazarus and others, copartners doing business under the firm name and style of Lewis Lazarus & Sons, against the

---

New York Central Railroad Company to recover the value of freight lost while in the possession of defendant. Judgment for the plaintiffs (271 Fed. 93), and the defendant brings error. Reversed and remanded.

Alex. S. Lyman, of New York City (William Mann, of New York City, of counsel), for plaintiff in error.

Harrington, Bigham & Englar, of New York City (Arthur W. Clement, of New York City, of counsel), for defendants in error.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. On May 12, 1917, at Singapore, China, there was delivered to the Seattle Vladivostock Steamship Line, 994 slabs of tin to be carried to Seattle, Wash., by the steamship Louise Nielson, and then by rail to New York. The tin was consigned to the defendants in error. Eventually the tin was delivered to the defendants in error, all except 183 slabs, which were lost by theft while in its possession. Below the defendants in error have recovered a judgment for the value of these stolen slabs of tin. It was an interstate shipment, and therefore subject to the rules and regulations contained in the interstate tariffs established by the plaintiff in error as required by the Interstate Commerce Act (Comp. St. § 8563 et seq.). There were two through bills of lading issued by the steamship company in China, but they were not on file with the Interstate Commerce Commission. The interstate tariffs established by the plaintiff in error and applicable to this shipment were conditioned on the terms and conditions of the form of the uniform bill of lading. Therefore the liability, if any imposed, must be determined by the conditions of the uniform bill of lading. As a defense, the following provision of the uniform bill of lading was pleaded:

"Suits for loss, damage, or delay shall be instituted only within two years and one day after delivery of the property or in case of failure to make delivery then within two years and one day after a reasonable time for delivery has elapsed."

This action was not commenced within two years and one day after delivery of the property referred to in the complaint, or within two years and one day after a reasonable time for delivery of the property had elapsed. The rate charged by the plaintiff in error for the transportation of the tin was the rate contained in the tariffs and classifications for the transportation of property shipped subject to the terms and conditions of the uniform bill of lading. The tariffs and classifications were fixed at a higher rate for the transportation of property when not subject to all the terms and conditions of the uniform bill of lading. The consignments of tin were received by rail carrier at Seattle, Wash., on June 17, 1917, and delivered in New York City, with the exception of the 183 missing slabs, on the 21st of August, 1917. The rate paid for the transportation was 56.02 cents per 100 pounds, which is the rate contained in the transcontinental east-bound import tariff, duly published and filed with the Interstate Commerce Commission, and in effect at the time the rules and regulations filed with the Interstate Commerce Commission provided that the above-

mentioned rate applies to properties shipped subject to all the terms and conditions of the uniform bill of lading which are contained in said classification. The rate charged when the consignor notifies the carrier that he elects to have his property transported subject to carrier's common-law and statutory liability, and not subject to all the uniform bill of lading conditions, is 10 per cent. higher than the rate charged for transportation of property subject to all those terms and conditions. No bill of lading was actually issued by this rail carrier. The usual time for transportation of carloads of tin from Seattle to New York and delivered to the consignee is from 20 to 23 days. These cars were in transit approximately 28 days. Claims were presented for the loss of the property in question on August 21, 1917, and investigations and other negotiations were pending up to the time of the commencement of this action.

[1] It is contended that the condition of the bill of lading as to the time within which this action must be commenced was suspended by virtue of the provisions of the Transportation Act of February 28, 1920 (section 206f [41 Stat. 462]). It provides:

"The period of federal control shall not be computed as a part of the periods of limitation in actions against carriers or in claims for reparation to the Commission for causes of action arising prior to federal control."

Section 206 (a) relates to causes of action arising out of federal control, and provides:

"Such actions, suits, or proceedings may, within the periods of limitation now prescribed by state or federal statutes, but not later than two years from the date of the passage of this act, be brought in any court which but for federal control would have had jurisdiction of the cause of action had it arisen against such carrier."

It is contended that section 206 (f) of this act invalidates the period of limitation set forth in the conditions of the uniform bill of lading, and that therefore this action was commenced in time. The argument is that section 206 (f) applies to all periods of limitations, whether applied by contract, regulation or statute. As the phrase "periods of limitation" is used in these sections of the Transportation Act, we think the words apply to limitations "now prescribed by the state or federal statutes." We think Congress did not intend a different meaning in the use of the words "periods of limitation," as used in paragraph (f), than their meaning as defined in paragraph (a). A phrase repeated in several sections of the statute will bear the same meaning throughout the statute, unless a different intention clearly appears. It will be presumed to be used in the same sense, and where its meaning is clear in the one instance, the same understanding will be attached to it elsewhere, unless the legislative body makes clear its intention that it be used in a different sense. Wells Fargo & Co. v. Taylor, 254 U. S. 175, 41 Sup. Ct. 93, 65 L. Ed. 205.

Of the same act section 438 was an amendment and provided that:

"It shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days, for the filing of claims than four months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant

that the carrier has disallowed the claim or any part or parts thereof specified in the notice."

The changes made in this section indicate clearly that Congress did not intend section 206 (f) to apply to provisions in tariff schedules which the common carrier is required to file with the Interstate Commerce Commission. The provisions upon which the plaintiff in error relies as a defense was contained in the contract of transportation, and not in a state or federal statute. And it appears that, if Congress intended to provide in section 206 (f) of the Transportation Act that the period of federal control should not be included in computing the time specified in the uniform bill of lading conditions, it would have so stated in section 438 of the act, which relates to the provisions of tariff schedules. Louisville Cement Co. v. Interstate Commerce Comm., 246 U. S. 644, 38 Sup. Ct. 408, 62 L. Ed. 914.

[2] The court below held that, where there is a valid contract between the shipper and carrier for a longer period, even by one day, than the period mentioned in the statutes, it would be improper to speak of the limitation as prescribed by the statute, but held that in this case there was no such contract, and it was not by contract, but by legislative permission that any period at all was fixed. But section 20 of the Interstate Commerce Act (Comp. St. §§ 8604a, 8604aa) merely prohibits a carrier from incorporating in a bill of lading conditions which it is required to file with the Interstate Commerce Commission. By a provision requiring suits be instituted within less than two years from the time the cause of action accrues prior to March 4, 1915, the date of the amendment to the Interstate Commerce Act, it was lawful for a carrier to provide in the bill of lading or file tariff schedules that claims should be presented and suits brought within a much shorter period than that fixed by the statute. So. Pacific R. R. Co. v. Stewart, 248 U. S. 446, 39 Sup. Ct. 139, 63 L. Ed. 350; Missouri, Kansas & Texas Ry. Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690. From the last-quoted cases it is apparent that the right of the carrier to provide "a rule, contract, or regulation" that suits must be brought within a reasonable time is not derived from the statute, but existed before the statute was enacted. The statute prohibits the carrier from inserting a provision in the uniform bill of lading conditions which it is required to file with the Commission and which, when filed, constitutes the contract of shipment that suits must be tried within less than two years from the time the cause of action accrues.

[3] By the schedules filed with the Interstate Commerce Commission by the plaintiff in error, two forms of agreement for transportation of property were given to the shipper. One was known as the uniform bill of lading, with its conditions referred to, requiring that suits should be instituted within two years; the other contained no provisions with respect to the time for the commencement of actions. It is clear to us that in the uniform bill of lading the condition as to the two years became a part of the agreement for the transportation of the property in question. Chicago, Rock Island & Pacific Ry. Co. v. Cramer, 232 U. S. 490, 34 Sup. Ct. 383, 58 L. Ed. 697. The time

within which the defendants in error were entitled to bring an action is therefore one fixed by the contract and not by statute, and the extension of time granted by the provision of the Transportation Act does not permit adding thereto the period of federal control, and it cannot apply, so as to change the terms of the contract entered into between the carrier and the shipper. Congress had the right to suspend the operation of the statute of limitations where the statute deals solely with the remedy, and does not at the same time destroy liability if the action is not brought within the prescribed time.

[4] The suspension of the statute of limitations in actions on personal debts does not, as applied to the debtor, deprive him of property in violation of the Fifth Amendment. Campbell v. Holt, 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483. And the reason therefor is that Congress had the right to extend the statute of limitations because the right to bring the action did not enter into or become a part of the contract. But where the time within which an action could be brought is agreed upon by the terms of the contract of shipment, it is one of the terms and conditions thereof and Congress could not deprive the plaintiff in error of this property right, for to do so would be a violation of the provisions of the Fifth Amendment. The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358; Phillips Co. v. Grand Trunk Ry., 236 U. S. 662, 35 Sup. Ct. 444, 59 L. Ed. 774; Central Vt. Ry. v. White, 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252. It was held in Jones v. Delaware, L. & W. R. R. Co., 114 Atl. 331 (N. J. Court of Errors and Appeals), that section 206 (f) was inapplicable to actions under the federal Employers' Liability Act of 1908 (Comp. St. §§ 8657–8665).

Since it appears that this action was not commenced for two years from August 21, 1919, we think that, by the contract of transportation between the parties, the defendants in error may not maintain this action.

Judgment reversed, and a new trial is ordered.