## Tax Refunds

Fuss, Deputy Attorney General, November 25, 1947.
—Your recent letter requests the advice of this department as to the proper construction to be given the refund provision of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §503, as amended, contained in section 503(a) (4). The construction given this section is determinative of the scope of the powers and duties of the Board of Finance and Revenue with respect to a particular class of cases. According to your request, numerous cases of this type are presented before the board. The facts of one such case, Commonwealth v. Schuylkill Valley Mills, Inc., are presented with your request and clearly illustrate the circumstances giving rise to the question involved.

Schuylkill Valley Mills, Inc., filed its corporate net income tax report for the year 1939 on April 15, 1940, and paid the self-assessing tax on that date in the amount of $1,835.88. The tax was settled and approved by the Commonwealth's fiscal officers in the said amount on November 21, 1940. The company filed a Federal report of change for the year 1939 on October 2, 1944, reporting a change in the Pennsylvania corporate net income tax for that year to $3,157.49, and remitted the difference calculated to be due in the amount of $1,321.61. The tax was resettled and approved by the fiscal officers on December 15, 1944, as per report of change.

Subsequently, on January 10, 1945, the fiscal officers settled and approved interest charges as follows:

Interest on $1,321.61 from due date, May 1, 1940, to 60 days after settlement date (Nov. 21, 1940), or 264 days at six percent......$ 57.35
Additional interest from January 20, 1941, to payment date (October 2, 1944), or three years, 265 days at 12 percent............ 586.71

Total ......................................$644.06

On January 17, 1945, the company paid the interest settlement in the said amount of $644.06. This is the amount of which refund is requested by petition filed with the board on July 17, 1947, more than two years, but less than five years, after the settlement and payment of this interest charge.

Petitioner claimed the benefit of the five-year period of limitations provided for in section 503(a) (4) of The Fiscal Code, supra, and relied upon Commonwealth v. The Bell Telephone Company of Pennsylvania, 53 D. & C. 296 (1944), as supporting both the merits of its claim and the authority of the board to apply section 503(a) (4). That case was decided by the Dauphin County court on July 17, 1944.

The general question raised by your request and occasioned by the presentation of this case before the board involves the scope of the board's powers and duties and may be stated as follows:

Does it lie within the scope of the board's statutory powers and duties under section 503(a) (4) to hear and determine a petition for refund of a tax or other money which has been paid to the Commonwealth under a provision of an act of assembly held, prior to such payment, by final judgment of a court of competent jurisdiction to be unconstitutional or held, *prior to such payment*, by such court to be erroneously interpreted, when the said petition has been filed with the board more than two years, but less than five years, after the payment of which the refund is requested, and more than two years, but less than five years, after the settlement of such taxes, bonus, or other moneys due the Commonwealth?

The question is one of construction.

The relevant provisions of section 503 of The Fiscal Code, supra, 72 PS §503, are as follows:

"The Board of Finance and Revenue *shall have the power, and its duty shall be,*

"(a) To hear and determine any petition for the refund of taxes, license fees, penalties, fines, bonus, or other moneys paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled and, upon the allowance of any such petition, to refund such taxes, license fees, penalties, fines, bonus, or other moneys, out of any appropriation or appropriations made for the purpose, or to credit the account of the person, association, corporation, body politic, or public officer entitled to the refund. The jurisdiction of the Board of Finance and Revenue to hear and determine a petition for refund, as aforesaid, shall not be affected or limited by the fact that proceedings under sections 1102, 1103 or 1104 of this act, involving the same tax or bonus and period for which a refund is sought, are pending or have been closed, provided such proceedings relate to other objections than those raised in the petition for refund. All such petitions must be filed with the board within two years of the payment of which refund is requested, or within two years of the settlement in the case of taxes or bonus, whichever period last expires, except . . .

"(4) When any tax or other money has been paid to the Commonwealth, under a provision of an act of Assembly *subsequently* held by final judgment of a court of competent jurisdiction to be unconstitutional, or under an interpretation of such provision *subsequently* held by such court to be erroneous. In such case, the petition to the board shall be filed within five years of the payment of which a refund is requested, or within five years of the settlement of such taxes, bonus or other moneys due the Commonwealth, whichever period last expires." (Italics supplied.)

Section 503 is not a pure statute of limitations, but contains rather a typical special statutory limitation

qualifying or conditioning the existence of a substantive right. A pure statute of limitations, on the other hand, affords an affirmative defense to an existing substantive right and thus provides a procedural limitation with respect to the enforcement of such right.

There is a wide variety of the former type of statute. Section 315 of The Pennsylvania Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, 77 PS §602, provides that in cases of personal injury or death all claims for compensation "shall be forever barred" unless within one year (formerly two years under The Workmen's Compensation Act of June 3, 1937, P. L. 1552) after the accident (or in case of death, after date of death) a claim petition shall have been filed. See Guy v. Stoecklein Baking Co. et al., 133 Pa. Superior Ct. 38, 45 (1938) ; Lewis v. Carnegie-Illinois Steel Corp., 159 Pa. Superior Ct. 226, 228, 229 (1946).[1]

In the field of Federal legislation, the Tucker Act of March 3, 1887, as amended, 28 U. S. C. §41(20), precludes recovery by plaintiff upon causes of action where fines have been imposed and money has been paid into the Treasury of the United States more than six years prior to the commencement of the actions. See Compagnie Generale Transatlantique v. United States, 51 F.(2d) 1053 (1931) ; McMichael v. United States et al., 63 F. Supp. 598 (1945).

The distinction has frequently been recognized between this type of special statutory limitation qualify-

---

[1] Another example is the Act of June 10, 1897, P. L. 139 (repealed by The Penal Code of June 24, 1939, P. L. 872, sec. 1201), creating an action against the surety on a constable's bond if filed within five years of the date of the bond. See Commonwealth ex rel. Fenton Storage Co. v. McClane, 154 Pa. Superior Ct. 246, 247, 248 (1944).

ing given rights and a pure statute of limitations. In construing section 315 of The Workmen's Compensation Act, supra, the Superior Court of Pennsylvania, in Guy v. Stoecklein Baking Co. et al., supra, at page 45, gave expression to the distinction in the following language:

" 'A wide distinction exists between pure statutes of limitation and special statutory limitations qualifying a given right. In the latter instance time is made an essence of the right created and the limitation is an inherent part of the statute or agreement out of which the right in question arises, so that there is no right of action whatever independent of the limitation': 37 C. J. 686. Statutes of the latter kind are in the nature of conditions put by the law upon the right given: Peters v. Hanger, 134 Fed. 586, 588; Wheatland v. Boston, 202 Mass. 258, 88 N. E. 769."

The general rule is that a pure statute of limitations provides a procedural *limitation*, but does not deal with substantive rights: Philadelphia Electric Co. Case, 352 Pa. 457, 463, 464 (1945). A special statutory limitation provides a procedural *condition* qualifying substantive rights. A statute of the latter type was held not merely a statute of limitations, but also jurisdictional in its nature and limiting the cases of which cognizance can be taken: Finn v. United States, 123 U. S. 227 (1887) ; United States v. Wardwell, 172 U. S. 48, 52 (1898).

In discussing the Tucker Act, supra, the Circuit Court of Appeals for the Second Circuit, in an opinion by Judge Augustus N. Hand, stated, in Compagnie Generale Transatlantique v. United States, supra, at pages 1056, 1057:

"But section 1 of that act [28 USCA §41(20)] is not a statute of limitations. The provision that no suit shall be brought against the United States unless

'within six years after the right accrued for which the claim is made' is a jurisdictional requirement, compliance with which is necessary to enable suit to be maintained against the sovereign.

"It has long been held that failure to bring action against the United States within six years after such rights have accrued is a bar to recovery. Ford v. United States, 116 U. S. 213, 6 S. Ct. 360, 29 L. Ed. 608; Finn v. United States, 123 U. S. 227, 8 S. Ct. 82, 31 L. Ed. 128; United States v. Wardwell, 172 U. S. 48, 19 S. Ct. 86, 43 L. Ed. 360; Louisville Cement Co. v. Int. Com. Comm., 246 U. S. at page 642, 38 S. Ct. 408, 62 L. Ed. 914. The statutory provisions under which recovery may be had are clear and mandatory, and no official has been authorized by repaying a portion of the fines or otherwise to waive the limitations enacted for the protection of the United States. Finn v. United States, 123 U. S. at page 233, 8 S. Ct. 82, 31 L. Ed. 128; Utah Power & Light Co. v. United States, 243 U. S. at page 408, 37 S. Ct. 387, 61 L. Ed. 791; Tucker v. Alexander, 275 U. S. at page 231, 48 S. Ct. 45, 72 L. Ed. 253; Ritter v. United States (D. C.), 19 F.(2d) at page 252."

In McMichael v. United States, supra, it was ordered that the motion of the United States be granted to dismiss the action for lack of jurisdiction. The court, in its opinion, stated that where permission to sue the United States is granted, compliance with all conditions imposed upon this right to maintain the action is jurisdictional, and that the bringing of suit under the Tucker Act within six years after the right accrues is jurisdictional.

Section 503 of The Fiscal Code, supra, is a typical special statutory limitation, establishing a *procedural condition* to the existence of a substantive right. This procedural condition is in the nature of a jurisdic-

tional limitation, qualifying a given right. The construction given section 503(a)(4) governs the scope of the board's power and duty to hear and determine a petition for refund thereunder rather than the substantive right of petitioner.

The nature of section 503 having thus been determined as being a special statutory limitation, we come now to the analysis of the provisions of that section.

The plain wording of section 503(a) in addition to conferring jurisdiction upon the Board of Finance and Revenue to hear and determine petitions for refunds, clearly sets forth the conditions under which such jurisdiction may properly be exercised. These conditions require (1) that moneys of which refund is requested shall have been paid the Commonwealth, (2) that the Commonwealth shall not be rightfully or equitably entitled to such moneys, and (3) that all petitions shall have been filed within two years of payment or within two years of settlement in case of taxes or bonus, whichever last expires.

Section 503(a) thus provides for a general two-year period of limitations within which jurisdiction over petitions for refund may be exercised upon full compliance with the other requisite conditions. This general two-year period of limitations is modified by way of exceptions in the succeeding subdivisions of 503(a). In one instance [2] the period is reduced to one year; in

---

[2] Subdivision 503(a)(1) provides as follows:

"Where a petition for refund filed by a domestic or foreign corporation involves the valuation of its capital stock, or in case of a foreign corporation the valuation of its tangible property for bonus purposes, or where a petition for refund filed by a bank, title insurance or trust company involves the valuation of its shares of stock, such petition must be filed with the board within one year of the payment of which refund is requested, or within one year of the settlement of such taxes or bonus, whichever period last expires."

other cases [3] the period is extended. Of the latter cases, the one with which we are here concerned is contained in subdivision 503(a)(4) hereinbefore quoted.

The relevant portion of 503(a)(4), in a particular case, extends the general limitations period of 503(a) to five years. The particular case provided for, and the necessary conditions under which this subdivision is to become operative are clearly specified in the first sentence thereof. Its applicability contemplates (1) the prior payment of tax or other moneys to the Commonwealth, and (2) that such payment shall have been made (a) under a provision of an act of assembly *subsequently* held by final judgment of a court of competent jurisdiction to be unconstitutional, or (b) under an interpretation of such provision *subsequently* held by such court to be erroneous. The language immediately following the statement of the requisite conditions declares:

"*In such case,* the petition to the board shall be filed within five years of the payment of which a refund is requested, or within five years of the settlement of

---

[3] Subdivision 503(a)(2) provides as follows:
"When the estate upon which any transfer inheritance tax has been paid shall have consisted in whole or in part of a partnership, or other interest of uncertain value, or shall have been involved in litigation, by reason whereof there shall have been an overvaluation of that portion of the estate on which the tax has been assessed and paid, which overvaluation could not have been ascertained within said period of two years. In such case, the application for repayment shall be made to the Board of Finance and Revenue, within one year from the termination of such litigation, or ascertainment of such overvaluation.

"(3) When a court of record has adjudged a person to be legally dead, and thereafter, in the settlement of his or her estate, a transfer inheritance tax shall have been paid on such estate, and, after such payment has been made, such person shall reappear and the court shall rescind its order and adjudication. In such case, the petition to the board shall be filed within six months after the court shall have rescinded its order and adjudication."

such taxes, bonus or other money due the Commonwealth, whichever period last expires." (Italics supplied.)

The word "subsequent" is defined in Webster's New International Dictionary (second edition, unabridged) as meaning, "following in time", or "coming or being later than something else". The word "subsequently" is a temporal adverb signifying some relationship in time to some fixed time of reference. The only temporal clause in the sentence to which the adverb can logically and grammatically refer is the clause "When any tax or other money has been paid to the Commonwealth". Thus the word "subsequently" as used in 503(a)(4) means, "subsequent to the payment of any tax or other money to the Commonwealth". Hence, the conditions under which this subdivision becomes operative clearly import that the tax or other money of which a refund is requested shall have been paid to the Commonwealth under a provision of an act of assembly which, subsequent to such payment, shall have been held by final judgment of a court of competent jurisdiction to be unconstitutional, or the interpretation of which, subsequent to such payment, shall have been held by such court to be erroneous. The payment must *precede* the court's appropriate action; the court's action must *follow* the payment of which the refund is requested.

This construction placed upon subdivision 503(a)(4) is grounded in good reason, as well as supported by rules of syntax. The extension of the general two-year period of limitations provided for in clause 503(a) to a five-year period in subdivision 503(a)(4) has the effect of encouraging prompt payment of taxes or moneys to the Commonwealth in special circumstances.

It can readily be seen that, in the absence of any provision such as contained in 503(a)(4), the taxpayer would be induced to withhold the payment of

any tax or money to the Commonwealth under a provision of an act of assembly, the constitutionality or interpretation of which was the subject of pending litigation. In order to preserve the two-year period of limitations granted under 503 (a), the taxpayer would withhold payment pending determination of such litigation. However, the presence of subdivision 503 (a) (4) makes such withholding impractical. It has the multiple effect of encouraging prompt payment to the Commonwealth, of avoiding to the taxpayer the incurring of additional interest charges and penalties, and of extending the period of time in which a refund may be requested beyond the probable period of pending litigation involving the interpretation or constitutionality of a provision of any act under which payment should have been made.

To ignore the presence of the word "subsequently" in 503 (a) (4), to treat the word as mere surplusage, or to fail to give it the full significance of proper interpretation would violate the basic rules of statutory construction and principles of good reason. In construing the statute no word of the statute is to be left meaningless, unless no other construction is possible: Keating v. White, 141 Pa. Superior Ct. 495, 15 A. (2) 396 (1940). On the contrary, every law should be considered, if possible, to give effect to all its provisions: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551. Moreover, it is to be presumed "That the legislature does not intend a result that is absurd . . . or unreasonable": Statutory Construction Act of 1937, supra, art. IV, sec. 52, 46 PS §552.

If, for purposes of argument, the word "subsequently" were treated as surplusage, the unreasonable effect of subdivision 503 (a) (4) in operation would become readily apparent. In such case the provision governing the five-year period of limitations would be

invoked (1) if the provision of an act should, at any time, be held by final judgment of a court of competent jurisdiction to be unconstitutional or held by such court to be erroneously interpreted, and (2) if payment were made under such provisions at any time either before *or after* such adjudication. It would then be contended that if the payment of the tax or other money were made 10, 15 or more years after the adjudication, the taxpayer would still have five years from the time of payment within which to request a refund. Obviously, such a consequence would give an undue and unequal advantage to such taxpayer as against one who had made a payment erroneously to the Commonwealth under the provision of an act which had never been litigated and to which payment the Commonwealth would not be "rightfully or equitably entitled". The latter taxpayer would be restricted to the general two-year limitations provided for in clause 503(a); the former would reap the advantage of the five-year period under subdivision 503(a)(4). Such an unduly discriminatory result would obtain without benefit of reason and squarely in the face of principles established in law.

It is a well-settled principle of law that when a statute has been construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statute as if plainly written into it originally: 59 C. J. 1036, §613 (citing cases); 50 Am. Jur. 199, §221 (citing cases). Without limitation as to the tribunal passing on the statute, it has been stated that judicial construction of a statute, so long as it is unreversed, is as much a part of it as if it had been written into it originally: Roos v. The City of Mankato et al., 199 Minn. 284, 371 N. W. 582 (1938). Likewise, where, as here, a statute refers to a holding by "a court of competent jurisdiction", the construction of such a court placed upon the provision of an

act of assembly is as much a part of the provision as if plainly written into it originally. Especially is the construction, placed upon a statute by a court, assumed to be the correct interpretation of the original intention of the legislature where the legislature specifically adopts the court's interpretation at the next session following the adjudication.[4]

In view of these considerations, the proper construction of section 503(a)(4) would permit the board, acting within the scope of its statutory powers and duties, to hear and determine a petition for refund under the said subdivision only when, and to the extent that, a tax or other money has been paid to the Commonwealth under a provision of an act of assembly held, subsequent to such payment, by final judg-

---

[4] The Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as amended, was reënacted and amended by the Act of April 11, 1945, P. L. 190, 72 PS §3420(a), et seq. The relevant portion of section 4 thereof was reënacted and amended to read as follows:

"Every corporation, upon the date its report is required herein to be made, shall pay the department not less than one-half of the tax due to the Commonwealth by it for such preceding year, and the remaining one-half of such tax shall be paid within the thirty days next succeeding, and, except as otherwise provided by law, no extension of time for the filing of any report granted by the department shall extend the date any tax, imposed by this act, shall be due and payable. The amount of all taxes, imposed under the provisions of this act, not paid on or before the time as above provided, shall bear interest at the rate of six (6) per centum per annum from the date they are due and payable until paid, *except that if the taxable income has been, or is increased by the Commissioner of Internal Revenue, or by any other agency or court of the United States, interest shall be computed on the additional tax due from thirty days after the corporation receives notice of the change of income until paid:* Provided, however, That any corporation may pay the full amount of such tax, or any part thereof, together with interest due to the date of payment, without prejudice to its right to present and prosecute a petition for resettlement, a petition for review, or an appeal to court. If it be thereafter determined that such taxes were overpaid, the department shall enter a credit to the account of such corporation, which may be used by it in the manner prescribed by law."

ment of a court of competent jurisdiction to be unconstitutional or held, subsequent to such payment, to be erroneously interpreted; provided, however, the petition for refund shall have been filed within five years of the payment of which a refund is requested, or within five years of the settlement of such taxes, bonus or other moneys due the Commonwealth, whichever last expires.

In arriving at this conclusion we are not unmindful of the various statutory recourses available to the taxpayer who may, even subsequent to adjudication, have made an erroneous payment of taxes or other money to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled. Under section 1102 of The Fiscal Code, supra, the taxpayer may, within 90 days of notice of settlement of any charge against him deemed to be erroneous, petition the Department of Revenue for resettlement. Succeeding procedure by way of petition for review before the Board of Finance and Revenue and subsequent appeal to the courts is provided for by sections 1103 and 1104 of The Fiscal Code, supra. Moreover, under section 1105, the Department of Revenue may, of its own initiative, make a resettlement within two years of the date of the original settlement if such is made erroneously. Another alternative is provided the taxpayer by section 503 (a) hereinbefore quoted and referred to, which permits the filing of a petition for refund of taxes or other moneys paid to the Commonwealth and to which the Commonwealth is not rightfully or equitably entitled, if such petition is filed within two years of the payment of which refund is requested, or within two years of the settlement in the case of taxes or bonus, whichever expires last.

For purposes of clarity and by way of illustration, the scope of the board's power and duty under section 503 (a) (4), as herein construed, may be readily con-

sidered in conjunction with the facts of the Schuylkill Valley Mills, Inc., case referred to in your request.

The taxpayer in that case, as hereinbefore stated, claimed the benefit of the five-year period of limitations provided for by section 503(a) (4) of The Fiscal Code, supra, and relied upon Commonwealth v. The Bell Telephone Company of Pennsylvania, supra, as supporting both the substance of his claim and the authority of the board to apply section 503(a) (4) insofar as the time limit for the filing of a petition for refund is concerned.

The case of Commonwealth v. The Bell Telephone Company of Pennsylvania, supra, involved an appeal from an interest settlement made against the taxpayer for delayed payment of a portion of its 1935 corporate net income tax. The facts of that case indicated that the taxpayer had filed its original report and had paid the tax indicated thereby within the time prescribed by law. Two and one half years later the Federal Government made a final determination of the taxpayer's net income for the year in question. A report was promptly made to the Commonwealth and the additional tax paid. The change in net income made by the Federal Government was due to the fact that it had disallowed a claim for accrued depreciation which had been allowed in previous years. Upon receipt of the report of change, the Commonwealth's taxing authorities made a settlement of interest against the taxpayer computed on the additional tax at the rate of six percent from May 1, 1936, to November 28, 1937, being 60 days after the original settlement, and at 12 percent from November 28, 1937, to December 8, 1938, when the additional tax was paid. The court held that the interest settlement was not sanctioned by law and entered judgment subject to exceptions in favor of the taxpayer. In the course of its opinion the court suggested that a feasible and equitable determination of interest charges would rest

upon a computation dating from the time that the corrected report is filed with the Commonwealth. (This suggestion was substantially adopted by the legislature at its next session upon reënacting and amending the Corporate Net Income Tax Act, supra, as set forth in footnote 4, supra.)

Thus, Commonwealth v. The Bell Telephone Company of Pennsylvania supplies the substantive basis of petitioner's claim. The effect of this decision in regard to the scope of the board's power and duty to exercise jurisdiction determined by the timeliness of the filing of the petition for refund under section 503(a) (4) is another matter entirely.

The illustrative case of Schuylkill Valley Mills, Inc., involves a petition for refund of certain interest payments. Hence, petitioner relies upon Commonwealth v. Bell Telephone Co., supra, as the focal case, by virtue of which it is claimed the board is given the power and authority to apply section 503(a) (4). Other cases before the board may involve petitions for refunds of payments other than interest under section 503(a) (4) and, hence, other focal cases may be relied upon as controlling by petitioners. The focal case in each instance is the original case which is held by final judgment of a court of competent jurisdiction to be unconstitutional, or held by such court to. be erroneously interpreted, and upon which a subsequent like case relies for invocation of section 503(a) (4). However, the general conclusion herein arrived at as determining the proper construction of section 503(a) (4) applies in all instances wherein any type of refund is sought under that section, irrespective of the particular focal case relied upon for that particular type of payment of which refund is claimed. However, where Commonwealth v. Bell Telephone Co., supra, is relied upon as the focal case, an additional feature appears.

In that case the decision of the Dauphin County court was handed down on July 17, 1944, in the form

of a written opinion concluding with a decree nisi in the following language, appearing in 53 D. & C. 296, 301:

"And now, to wit, July 17, 1944, judgment is entered against the Commonwealth and in favor of the defendant in the sum of $4,312.91, unless exceptions hereto be filed within the time limited by law. The Department of Revenue is hereby directed to enter a credit for this amount upon its books in favor of the defendant.

"The Prothonotary is directed to notify the parties or their counsel of this decree forthwith."

This decision constituted the only pronouncement of the court on the merits of the case before it.

Exceptions to the decree nisi having been filed within the time prescribed, the Commonwealth, on April 20, 1945, entered into a stipulation with counsel for the Bell Telephone Company whereby it was agreed that the exceptions should be withdrawn and final judgment entered as of August 17, 1944. The stipulation was presented to the court in the form of a petition. Thereupon, on the same day, the court, without further discussion or holding, made the following order:

*"Order of court*

"And now, to wit, April 20, 1945, the above petition having been presented in open court and after due consideration thereof, it is ordered and decreed that the exceptions be withdrawn and final judgment entered as of August 17, 1944.

"By the court,
"Karl E. Richards,
P. J."

This consent judgment was entered on April 20, 1945, as of August 17, 1944, with no accompanying opinion.

With respect to the effect of section 503 of a consent judgment entered by stipulation between the Commonwealth and counsel for a taxpayer "agreeing that final judgment might . . . be entered . . . against the Commonwealth", Platt et al., Execs., v. Wagner et al., 347 Pa. 27 (1943) is particularly pertinent.

That case originated with a mandamus proceeding before the Dauphin County court (Platt and Bissell v. Board of Finance and Revenue, 53 Dauph. 266 (1942)) by the executors of Jane Livingston Armour to compel the Board of Finance and Revenue to refund a transfer inheritance tax. The tax in question, which was paid on May 3, 1928, was on the transfer of Pennsylvania corporation's stocks owned by decedent, who died on February 23, 1928, a resident of New York. The petition for refund was presented to the board on July 6, 1932, and refused on June 4, 1942. The tax was imposed under the provisions of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, which provided, inter alia, that personal property of a nonresident would not be subject to the tax if a like exemption is made by the laws of the State of decedent's residence in favor of residents of Pennsylvania.

At the time the tax was paid there was no reciprocity between Pennsylvania and New York, due to the rulings, *without final decision*, of the Supreme Court of Pennsylvania, in Commonwealth v. Taylor's Executor, 297 Pa. 335 (1929), reargued under the caption Commonwealth v. Farmers Loan & Trust Co., 301 Pa. 114 (1930). However, on July 3, 1931, the Attorney General of Pennsylvania entered into a written stipulation with counsel for the Taylor estate reciting that the New York Act of 1931 had reëstablished reciprocity between the two States for the period during which reciprocity had been suspended, and agreeing that final judgment might, therefore, be entered in the Taylor case in favor of the executors against the Commonwealth. Accord-

ingly, the Supreme Court of Pennsylvania made an order as follows:

"Because of the foregoing agreement judgment is hereby entered in the above case in favor of the defendant and against the plaintiff."

The Dauphin County court held that the consent judgment constituted a final order of the Supreme Court, determining that actual reciprocity had been established for the period in question and that, since the tax in the present case was paid under an interpretation of law subsequently held to be erroneous by the Supreme Court, the petitioners were entitled to the refund, and directed the Board of Finance and Revenue to make the refund requested.

On appeal from this order the Supreme Court of Pennsylvania (347 Pa. 27 (1943)) reversed the Dauphin County court and declared in its opinion as follows (p. 35):

"The view we have thus taken on the merits makes it unnecessary to discuss at length whether the application by these plaintiffs for a refund was barred in any event by reason of the provision of section 503 of The Fiscal Code that a petition for that purpose must be filed with the Board within two years of the payment alleged to have been erroneously made. Plaintiffs' petition was filed long after the expiration of two years from the time they paid the tax. It is true it was filed within five years, and section 503 provides, by way of an exception, that the petition may be filed within five years of the payment in case the tax was paid under a provision of an Act of Assembly subsequently held by the court of final jurisdiction to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous. Here, however, there was no act held by this Court to be unconstitutional nor any interpretation thereof subsequently held by this Court to be erro-

neous, it having already been pointed out that the consent-judgment in the Taylor case was not a 'holding' by this Court." [5]

The amendment to subdivision 503(a) (4) by the Act of May 7, 1943, P. L. 229, renders that provision even more applicable to the instant case, first, by the express requirement of a "final judgment", and, secondly, by broadening the field of the adjudicating tribunals to include lower courts as "court(s) of competent jurisdiction".

Furthermore, the pronouncement of the Supreme Court of Pennsylvania, hereinabove quoted in the Platt case, applies with even greater force to the facts of the instant case, Schuylkill Valley Mills, Inc. In the former case the tax was paid on May 5, 1928, being prior even to the adjudication of its focal case, the Taylor case, by the lower court (January 31, 1929). In the instant case the payment was made January 17, 1945, being *subsequent* to the decree nisi in its own focal case, the Bell Telephone Company case (July 17, 1944), and even *subsequent* to August 17, 1944, being the date as of which "final judgment" was entered by stipulation.

---

[5] At the time this case was before the Supreme Court of Pennsylvania, subdivision (4) excepted from clause (a) of section 503 of The Fiscal Code of April 9, 1929, P. L. 343, as amended by the Act of August 5, 1941, P. L. 797, provided, inter alia, as follows:

"When any tax or other money has been paid to the Commonwealth, under a provision of an act of assembly subsequently held by *the court of final jurisdiction* to be unconstitutional, or under an interpretation of such provision subsequently held by such court to be erroneous. In such case, the petition to the board shall be filed within five years of the payment of which a refund is requested." (Italics supplied.) This portion was later twice amended to read as it presently does.

By the Act of May 7, 1943, P. L. 229, the above italicized portion was replaced by the clause "final judgment of a court of competent jurisdiction". By the Act of May 15, 1945, P. L. 528, the above portion of subdivision (4) as thus amended, was further amended by adding at the end thereof "or within five years of the settlement of such taxes, bonus or other moneys due the Commonwealth, whichever period last expires".

In neither focal case—the Taylor case nor the Bell Telephone Company case—was there a "holding" by final judgment.

Had the taxpayer in the instant case sought a resettlement under section 1102 of The Fiscal Code, supra, of the interest charge within 90 days of the settlement complained of, no doubt it would have been entitled to its claim. Or, having failed to take advantage of this provision, it might have filed a petition for refund under section 503 (a) within two years of the payment of the money of which refund is requested, which time expired in this case on January 17, 1947, no doubt it would have likewise prevailed in its claim.

When, having failed to act diligently in accordance with either of these sections, it seeks to invoke the benefit of section 503 (a) (4) it finds itself directly confronted with the undisputed facts that the decree nisi of the Dauphin County court in Commonwealth v. Bell Telephone Company of Pennsylvania, supra, was not *subsequent* to, but fully six months *prior to* the payment of the moneys to the Commonwealth of which refund is requested; that the date of the "final judgment" as stipulated August 17, 1944, was itself fully five months *prior to* the said payment; and, finally, that the consent judgment is itself not such a "holding" as is required by section 503 (a) (4) under the authority of Platt et al. v. Wagner et al., supra.

Accordingly, under the construction hereinbefore placed upon section 503 (a) (4), the facts of this particular case do not bring it within the scope of the board's power and duty to herein determine the petition under the said section.

Ignorance of one's rights will not stay the operation of a statute of limitations: New Holland Turnpike Co. v. Farmers' Insurance Co., 144 Pa. 541 (1891). Neither is it an effective restraint to the running of the statute of limitations to call attention to the igno-

rance of other responsible parties to such rights. The erroneous settlement of interest charges by the Commonwealth taxing authorities, almost six months after an adjudication rendering a similar settlement unsanctioned by law, does not excuse the taxpayer's lack of diligence nor toll the running of the statute of limitations. No fraud or concealment of facts is charged against the Commonwealth's fiscal officers.

In Clapp v. Township of Pine Grove, 138 Pa. 35 (1890), it was held that a statute of limitations runs against a right of action for moneys paid under an erroneous assessment of county and township taxes from the time the money was paid, although the purchaser at a sale of the land for taxes was ignorant of the facts, and that an offer to prove that the township assessors and the county commissioners "were notified that the assessment was erroneous" before the sale, is insufficient to show such fraud or concealment of facts as will toll the statute.

While these principles have been enunciated with respect to a pure statute of limitations, they are equally applicable in a case involving a special statutory limitation qualifying or conditioning the creation or existence of a substantive right: Guy v. Stoecklein Baking Co. et al., supra.

We are, therefore, of the opinion, and you are accordingly advised, that

1. The Board of Finance and Revenue, acting within the scope of its statutory powers and duties, is authorized to hear and determine a petition for refund under section 503(a) (4) of The Fiscal Code of April 9, 1929, P. L. 343, as amended, 72 PS §503, only when, and to the extent that, any tax or other money has first been paid to the Commonwealth under a provision of an act of assembly held, subsequent to such payment, by final judgment of a court of competent jurisdiction, to be unconstitutional, or held by such court to be

erroneously interpreted, provided that the petition for refund shall have been filed within five years. of the payment of which a refund is requested, or within five years of the settlement of such taxes, bonus or other moneys due the Commonwealth, whichever period last expires; and

2. The consent judgment entered by stipulation in the case of Commonwealth v. Bell Telephone Company of Pennsylvania, 53 D. & C. 296, does not constitute a "holding" as required by section 503(a) (4) under the authority of Platt et al. v. Wagner et al., 347 Pa. 27 (1943).