327 F.2d 201
 Truitt Mathew STEWART, also known as Bud M. Stewart, and
System Investment Corporation, Appellants,
v.
UNITED STATES of America and Asbury Transportation Company,
Appellees.
UNITED STATES of America, Appellant,
v.
ASBURY TRANSPORTATION COMPANY, Appellee.
 Nos. 7365, 7366.
 United States Court of Appeals Tenth Circuit.
 Jan. 22, 1964.
 
 Joseph M. Butler, of Bangs, McCullen, Butler & Foye, Rapid City, S.D., for appellant Truitt Mathew Stewart, also known as Bud M. Stewart, and System Investment Corp.
 John W. Douglas, Asst. Atty. Gen., Robert N. Chaffin, U.S. Atty., Alan S. Rosenthal and Stephen B. Swartz, Dept. of Justice, for United States.
 David D. Uchner, of Henderson, Godfrey & Kline, Cheyenne, Wyo., for appellee Asbury Transportation Co.
 Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.
 MURRAH, Chief Judge.
 
 
 1
 This is an appeal from a summary judgment for the United States against appellants, Truitt Mathew Stewart and System Investment Corporation, on its claim against them and appellee, Asbury Transportation Company, for overcharges for transportation of Government property, by a subsequently defunct motor carrier. The claim is prosecuted on the trust fund theory, and the summary judgment against System and Stewart is based upon the following undisputed facts. Between 1944 and 1956, Arrowhead Freight Lines, Ltd., a California corporation and certified common carrier, overcharged the Government for transportation of Government property in a stipulated amount. From 1944 until April, 1955, all of the outstanding corporate stock of the Arrowhead Freight Lines, Ltd. was owned by Asbury Transportation Company. On the latter date, the Arrowhead stock was sold to the appellant, System Investment Corporation, a California corporation. On or shortly after that date, appellant Stewart was the owner of 70% Of the corporate stock of System. System was not a certified common carrier, and Arrowhead continued operations as a certified carrier until September 11, 1956, when System sold all of the assets of Arrowhead, including equipment and common carrier certificates, to another corporation and Arrowhead, thereupon, presumably ceased to do business.[1]
 
 
 2
 Neither System, Stewart nor Asbury deny the substance of the trust fund theory, under which a creditor of a dissolved corporation may follow its assets in the nature of a trust fund, into the hands of its stockholders or distributees, as trustees. See: McWilliams v. Excelsior Coal Co., 8 Cir., 298 F. 884; Hatch v. Morosco Holding Co., 2 Cir., 50 F.2d 138; and Koch v. United States, 10 Cir., 138 F.2d 850. System and Stewart, however, deny the applicability of this theory to the agreed facts of our case, contending that there was no allegation or proof that either System or Stewart actually received the proceeds from the sale of the Arrowhead assets, or that a judgment had been obtained against Arrowhead and execution thereon returned unsatisfied-- a condition which they contend is prerequisite to the trust fund remedy. True, the agreed facts do not specifically recite that System and Stewart actually received the proceeds from the sale of the Arrowhead assets. But, in the pre-trial proceedings, counsel for both System and Stewart stated on the record that the proceeds of the Arrowhead sale, amounting to approximately $1,600,000, 'was distributed to the stockholders, namely System Investment Corporation.' This statement is a part of the record in the case, and the fact is, moreover, clearly inferable from the stipulations.
 
 
 3
 Asbury denies liability under the trust fund theory on the basis of the undisputed fact that Asbury sold all the capital stock of Arrowhead to System for $400,000 in 1955; and, that System controlled and operated Arrowhead as a part of its business until it sold all of the Arrowhead assets in 1956. In the alternative it has cross-claimed against System and Stewart for any judgment taken against it in favor of the Government. The cross-claim is based upon written releases on the record, executed by Arrowhead and System, releasing and discharging Asbury from all claims and demands '* * * whatsoever from the beginning of the world to the date of these presents.'
 
 
 4
 The axiom which requires a suitor to exhaust his legal remedies before resorting to equity, ordinarily requires him to seek judgment and execution against a debtor before pursuing his equitable remedy to follow the assets of the debtor into the hands of distributees or transferees. See: Pierce v. United States, 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697. But, equity will not require a useless thing, or insist upon an idle formality. And, if the debtor is a corporation which has ceased to exist, it is 'entirely proper for the validity of the debt to be presented and determined in the equitable action to enforce the * * * liability of the stockholder.' McWilliams v. Excelsior Coal Co., supra. And see: United States v. Fairall, 2 Cir., 16 F.2d 328; and Huntress v. Huntress' Estate, 7 Cir., 235 F.2d 205, 61 A.L.R.2d 682.
 
 
 5
 Under the trust fund theory, the debts followed the Arrowhead assets, and are enforceable against the ultimate distributees. As the record distributees of the assets of the debtor-Arrowhead, System and Stewart are accountable in equity for the provable debts, and the trust fund remedy is undoubtedly appropriate to enforce the Government's claim against them. But the operative facts are quite different with respect to Asbury. Certainly, Asbury is not liable to the Government under the trust fund theory simply because at the time the debts were incurred, Asbury was the owner of the Arrowhead stock. And, there is nothing in this record to indicate that at the time of the sale of the stock by Asbury to System, Arrowhead was insolvent or had ceased to do business. It is agreed that after System acquired the Arrowhead stock, Arrowhead continued operations until System sold all of its assets and became the distributee of the proceeds.[2] In these circumstances, there is no basis in applicable Wyoming law for the application of the trust fund remedy to the Government's claim against Asbury. See: Harle-Haas Drug Co. v. Rogers Drug Co., 19 Wyo. 35, 113 P. 791. The trial Court's order dismissing the claim against Asbury is sustained.
 
 
 6
 The trial Court did not specifically state whether the dismissal was based upon the inapplicability of the trust fund remedy as to Asbury, or upon the strength of the releases pleaded in Asbury's counterclaim, and the Government has cross-appealed on the contingency that System and Stewart be exonerated from liability for the overcharges while Asbury was the owner of Arrowhead's capital stock. Since, however, we hold the trust fund remedy inapplicable to the Government's claim against Asbury and applicable to System and Stewart as Trustees of the liquidated Arrowhead assets, we have no occasion to consider the liability of System and Stewart to Asbury on its counterclaim, nor do we have occasion to consider the Government's cross-appeal from the trial Court's judgment of dismissal as to Asbury. It is sufficient to the disposition of both the counterclaim and the cross-appeal that Asbury is not liable to the Government under the trust fund theory, and that the remedy is available to enforce the entire debt for the overcharges against System and Stewart.
 
 
 7
 As a further defense to the Government's claim, System and Stewart invoke 204a of the Interstate Commerce Act (63 Stat. 280), before its amendment in 1958 (72 Stat. 859; 49 U.S.C. 304a), as a jurisdictional bar to the asserted claim. During the period in which these claims arose, the statute provided in effect that all actions at law by motor carriers for the recovery of their charges, or against them for the recovery of overcharges, 'shall be commenced within two years from the time when the cause of action accures and not after.' The appellants' contention is that this section is not a mere statute of limitation, traditionally inapplicable to the United States, but is rather a limitation upon the power of the court to grant relief to anyone. Comparable provisions of 16(3) of the Interstate Commerce Act (49 U.S.C. 16(3)), specifically applicable to common carriers by railroad in actions filed with the Interstate Commerce Commission, for recovery of overcharges, have been construed as a jurisdictional limitation on the power of the Commission to grant the overcharges. See: Phillips Co. v. Grand Trunk Railway, 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774; and Louisville Cement Co. v. Interstate Commerce Commission, 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914. Neither of these cases involved suits by the Government. The Interstate Commerce Commission has, however, held the limitations of 16(3) applicable to the United States. See: United States v. Director General, 80 I.C.C. 143; United States v. Southern Railway, 286 I.C.C. 203; and War Materials Reparation Cases, 294 I.C.C. 5. And, its applicability was assumed arguendo in United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126. The question was squarely put in United States v. De Queen & Eastern Railroad Co., 8 Cir., 271 F.2d 597, and the Eighth Circuit held that traditional Governmental immunity from statutes of limitation and laches applied, unless Congress had clearly manifested an intention to make the statute applicable to Government suits. And, since at that time, as here, there was no such expressed Congressional policy, 16(3)(c) was held inapplicable to the Government's claim for overcharges filed before the Commission. And see: Shutt v. United States, 5 Cir., 218 F.2d 10.
 
 
 8
 Section 204a (49 U.S.C. 304a) was interposed in a Government suit against a motor carrier for overcharges in United States v. Yale Transport Corporation, D.C., 184 F.Supp. 42. Following the De Queen case, the District Court for the Southern District of New York held the statute inapplicable to the Government's suit. Its conclusions were 'fortified' by the fact that, '* * * when Congress in 1958 amended 304(a) and 66 of Title 49, it specifically made the limitation provision applicable to the United States under both sections.' Ibid, 184 F.Supp. p. 45. The Congressional history of the 1958 amendment indicates that the Congressional Committees were in doubt concerning the judicial interpretation of the section, and in order to bring about uniformity of the limitation provisions in both 16(3)(c) and 304a, specifically recommended that the limitations in the act, as amended, be made applicable to the Government. See: Senate Report No. 334, 85th Congress, Second Session, U.S. Code Congressional and Administrative News 1958, p. 3923.
 
 
 9
 While there is certainly room for doubt, in view of the Interstate Commerce Commission's construction of 16(3)(c) and the assumption in United States v. Western Pacific Railroad Co., supra, we will adopt the reasoning of De Queen and Yale Transport, as consistent with traditional notions of governmental immunity, in the absence of an expressed Congressional intent to subject the Government to such limitations.
 
 
 10
 System and Stewart contended in the trial court that the Bill of Lading, by its expressed terms, subjected the Government to the 'same rules and conditions as govern commercial shipments made on the usual forms provided therefor by the carrier.' But, they do not urge this point on appeal. And, in any event, we agree with Judge Weinfeld in United States v. Yale Transport Corporation, supra, 184 F.Supp. p. 45, 'that * * * these provisions clearly relate to actions to recover damages to merchandise or based upon nondelivery of shipments.'
 
 
 11
 Affirmed.
 
 
 
 [1]
 The original complaint alleged that Arrowhead's charter had been forfeited to the State of California in 1958, for failure to file corporate reports, and at a pre-trial hearing, counsel for the Government repeated the allegation. Neither the allegation nor the statement was disputed on the record, but there is no specific agreement about it
 
 
 [2]
 The parties agree to the following facts: 'On April 11, 1955 all of the corporate stock owned by Asbury Transportation Company was sold and transferred by said Asbury Transportation Company to System Investment Corporation, also a California Corporation which was not a certificated common carrier under the Interstate Commerce Commission. From April 11, 1955 to September 1956 Arrowhead continued operations as a common carrier subject to the Interstate Commerce Act. In September 1956 all of the rolling stock, assets in certificates of Arrowhead were sold to Interstate Motor Lines, a Corporation of Salt Lake City. Shortly after that date, during the years of 1955 and 1956 the defendant, Bud M. Stewart, was the owner of 70% Of all the corporate stock of System Investment Corporation.'